790 A.2d 281

Beth A. HUMPHREYS, Appellee,

v.

William DEROSS, Appellant.

Supreme Court of Pennsylvania.

Submitted March 6, 2001.

Decided Feb. 20, 2002.

616

Joanne Ross Wilder, Pittsburgh, Stephen E. Hall, Meadville, for appellant.

Barbara Jean Mountjoy, Meadville, for appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN AND SAYLOR, JJ.

### *OPINION*

NEWMAN, Justice.

We granted allocatur in this case to address the issue of how the receipt of an inheritance affects child support obligations of a payor. For the reasons that follow, we reverse the Order of the Superior Court that affirmed a decision by the Court of Common Pleas of Crawford County (trial court), which held that an inheritance was income available for support.

### *FACTS AND PROCEDURAL HISTORY*

Appellant, William DeRoss (DeRoss), is the father of Angela, born March 3, 1981. Angela lives with her adult sister, Beth A. Humphreys (Humphreys), who is the Appellee in this matter. DeRoss receives $858.00 in Workers' Compensation benefits, twenty percent of which he owes to his attorney. He also receives $355.00 in social security disability payments per month. In 1997, DeRoss' mother died, leaving him as the sole

beneficiary of her estate. On August 25, 1999, the estate sold his mother's house, and realized $83,696.50, which it distributed to DeRoss. From the proceeds, DeRoss purchased a home and other items for his current family. On August 28, 1997, Humphreys filed a petition for modification of an existing support order asserting a change in DeRoss' circumstances because of the inheritance.[1]

A hearing officer determined that the entire amount of the inheritance was income to DeRoss, and prorated it over the remaining period of Angela's minority. Thus, he imputed to DeRoss an additional $4,525.00 per month in income.[2] Based on the Support Guidelines, DeRoss' obligation was $723.45 per month minus $108.00, which Social Security paid to Angela on behalf of DeRoss. On November 24, 1997, the trial court adopted the hearing officer's recommendation and set the support obligation at $615.45 per month, retroactive to August 31, 1997. With an adjustment for arrears, the court ordered him to pay $700.00 per month for Angela's support. DeRoss sought a *de novo* hearing, following which the trial court issued an Order on May 20, 1998, reducing the support obligation of DeRoss to $609.45 per month due to an increase in the amount Angela was receiving from Social Security. Appellant filed an appeal to the Superior Court, which affirmed the Order of the trial court.

## DISCUSSION

In reviewing child support matters, appellate courts apply the abuse of discretion standard. *Ball v. Minnick*, 538

1. We are unable to determine the amount of the original support order from the Reproduced Record.

2. The Note to Pa.R.C.P. 1910.16–2 provides:

> The trial court has discretion to determine the most appropriate method for imputing lump-sum awards as income for purposes of establishing or modifying the party's support obligation. These awards may be annualized or they may be averaged over a shorter or longer period of time depending on the circumstances of the case.

Because we determine that an inheritance is not income, we do not address the issue of whether the trial court abused its discretion in dividing the amount of the inheritance by the number of months remaining until Angela's eighteenth birthday.

Pa. 441, 648 A.2d 1192 (1994). This Court has defined an abuse of discretion as follows:

Not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused.

*Blue v. Blue,* 532 Pa. 521, 616 A.2d 628, 631 (1992) citing *In re Women's Homeopathic Hospital of Philadelphia,* 393 Pa. 313, 142 A.2d 292, 294 (1958).

 Our analysis begins with the definition of "income" set forth in Section 4302 of the Domestic Relations Code, 23 Pa.C.S. §§ 101—8215:

"Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. 4302.[3]

 Citing its decision in *Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346, 1348 (1996), *allocatur denied,* 548 Pa. 670, 698

3. At the time Humphreys commenced the instant support action, Section 4302 provided the following definition of income:

A.2d 594 (1997), the Superior Court noted that the statutory definition of "income" is not intended to be an all-inclusive list because it includes the phrase "including, but not limited to." We disagree. The Section 4302 definition of "income" includes "compensation for services, *including, but not limited to* wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property" (emphasis added) and numerous other sources. The plain meaning of the statute provides that *including, but not limited to* refers solely to types of compensation for services. The statute does not provide that *income* includes, but is not limited to various types of compensation for services. Accordingly, in order to be included in the statutory definition of income, a resource must reasonably fit within one of the categories enumerated in Section 4302.

▆▆▆ The inheritance DeRoss received from his mother's estate does not meet the definition of "income in respect of a

"Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; or other entitlements to money or lump sum awards, without regard to source.

On December 16, 1997, during the pendency of the litigation, the legislature expanded the definition of "income" to include bonuses and "lottery winnings, income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source." December 16, P.L. 549, No. 58, § 1.1, effective January 1, 1998. The current definition of "income" may be applied to this case because retrospective laws are permitted "when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair and do not vary existing obligations contrary to their situation when entered into and when prosecuted." *Brangs v. Brangs,* 407 Pa.Super. 43, 595 A.2d 115, 119 (1991). *See also, Nicholson v. Combs,* 550 Pa. 23, 703 A.2d 407 (1997).

decedent" or "income from an interest in an estate or trust." [4]
In light of the fact that the legislature specifically included
"income from an interest in an estate or trust" but did not
include the principal of an inheritance or trust, it is logical to
assume that the legislature did not intend to include the
principal. *Strunack v. Ecker*, 283 Pa.Super. 585, 424 A.2d
1355 (1981), *rev'd on other grounds*, 496 Pa. 290, 436 A.2d 1187
(1981) (where certain things are specified in a statute, omis-
sions are exclusions); *Commonwealth v. Charles*, 270 Pa.Su-
per. 280, 411 A.2d 527 (1979). Considering that inheritance is
one of the most common means by which wealth is trans-
ferred, it defies logic that the legislature would not have
clearly provided for inheritance within the statutory definition
of income if that were its intent. It is for this reason that we
reject the determination by the Superior Court that the
inheritance DeRoss received falls within "other entitlements to
money or lump sum awards, without regard to source, includ-
ing lottery winnings," [5] and the position espoused by the
concurring opinion of the Superior Court, which stated that
the monies at issue should be categorized as "any form of
payment due to and collectible by an individual regardless of
source." [6]

4. The dissenting opinion asserts that the inheritance at issue in this
matter falls within the definition of "income from an interest in an
estate or trust." We disagree, in recognition of the difference between
income generated from an interest in an estate and the inheritance
itself. We also disagree with the dissenting opinion's conclusion that
the house constituted the corpus of the inheritance, and that the
proceeds from the sale should be deemed income. It was not DeRoss,
but his mother's estate that sold the house, thus converting it to cash.
The corpus of the inheritance, which DeRoss received upon final
distribution of the assets, was cash.

5. In his concurrence, President Judge McEwen, now President Judge
Emeritus, agrees with the majority that the inheritance received by
DeRoss must be included as income within the definition set forth in
Section 4302, but he does not state which provision of Section 4302
applies to this case.

6. The dissenting opinion asserts that the inheritance received by DeR-
oss can also be considered as an entitlement to money regardless of the
source or as a form of payment due and collectible. As Judge Eakin,
now Mr. Justice Eakin, noted in his dissenting opinion in the Superior
Court, the legislature would not have used so general a term as "other
entitlements to money" if it had intended to include so common a form

■ The definition of "income" provided in Section 4302 must be understood in the context of the Support Guidelines. Section 4322(a) of the Domestic Relations Code provides:

Statewide Guideline.—Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

23 Pa.C.S.A. § 4322(a). The 1998 Amendment to the Support Guidelines, effective April 1999, specifically provides, "Monthly gross income is ordinarily based upon at least a six-month average of income. The term 'income' is defined by the support law, 23 Pa.C.S. § 4302, and includes income from any source." Pa.R.C.P. 1910.16–2 (Support Guidelines. Calculation of Net Income).[7] Therefore, it is appropriate to consider the purpose of the Support Guidelines, which is to ensure that "persons similarly situated shall be treated similarly." In the instant matter, DeRoss has actual income of $1041.00 per month. He received $82,500 from his mother's estate, which he immediately used to buy a house. Nevertheless, by dividing the amount of the inheritance by the number of months remaining until Angela reached her majority, the hearing

of transfer of wealth as inheritance. We further agree with then Judge Eakin's observation that term "payment" refers to compensation or discharge of a debt, and not to moneys one receives from a parent's estate.

7. We recognize that the Support Guidelines did not contain a direct reference to the Section 4302 definition of income at the time of the support order at issue in the instant matter. However, the 1998 amendment, effective April 1, 1999, underscores the significant relationship between the statutory definition of income and the Support Guidelines.

officer determined, and the trial court agreed, that DeRoss had additional monthly income of $4545.00 available for support. However, this ignores the economic reality that DeRoss is not similarly situated to a person with a monthly cash flow of $5586.00. As stated in *Ball v. Minnick*, 538 Pa. 441, 648 A.2d 1192 (1994):

> there should be available for the needs of a child of separated parents the same proportion of parental income that would have been available for the needs of that child if the parents lived together. The guidelines assume that similarly situated parties, at least with respect to income levels, will have similar reasonable needs and expenses. The reasonable needs of the child as well as the reasonable expenses of the obligor are factored into the support guidelines. The support guideline amount is presumed to be (1) a payment which the obligor can reasonable afford and (2) a payment that is reasonably necessary to further the child's welfare.

*Id.* at 1197. Including an inheritance in income available for support does not reflect how families in which parents live together treat inheritances. In an intact family, the receipt of a lump sum is likely to be used for purchases, investments or savings, and not for meeting living expenses. Therefore, considering the entire inheritance as income available for support is contrary to the purposes of the support guidelines.

Our review of cases from other jurisdictions indicates that inheritances are generally not considered income when calculating child support. As noted by the Superior Court, many states include only the income generated from an inheritance in child support calculations. *See, Halter v. Halter*, 60 Ark. App. 189, 959 S.W.2d 761 (1998) (although an inheritance is not income, any income that might have been generated by an inheritance could have been considered in determining the amount of support); *Armstrong v. Armstrong*, 831 P.2d 501, (Colo.Ct.App.1992) (income that an inheritance could reasonably be expected to generate is a financial resource constituting gross income for the purposes of child support); *Stula v. Stula*, 1998 WL 457694, 1998 Conn.Super. LEXIS 2132

(Conn.Super.Ct.1998) (return of income on inherited property must be included when calculating support); *Connell v. Connell*, 313 N.J.Super. 426, 712 A.2d 1266 (1998) (court could impute income even when inheritance was invested in non-income producing real estate); *Gainey v. Gainey*, 89 Wash. App. 269, 948 P.2d 865 (1997) (interest earned on an inheritance is included in support calculation). Additional authority for this position can be found in *Robinson v. Robinson*, 961 P.2d 1000 (Alaska 1998) (although the principal amount of an inheritance should not be included as income, interest from the principal amount should be considered as income), *Gal v. Gal*, 937 S.W.2d 391 (Mo.Ct.App.1997) (trial court considered mother's income from inheritance); and *Lendman v. Lendman*, 157 Wis.2d 606, 460 N.W.2d 781 (1990) (interest income from inheritance is includable in income for support).

In support of its position that a lump sum inheritance is income available for support, the Superior Court relied on decisions from other jurisdictions. It asserted that *Crayton v. Crayton*, 944 P.2d 487 (Alaska 1997), holds that a one-time gift from the payor's father was includable as income because the court was not dealing with indeterminate payments arriving in the future. However, *Crayton* states, in relevant part, "In cases ... where the court must establish a child support obligation for the future, the inclusion as income of a one-time gift or an inheritance would unfairly inflate that obligation beyond the obligor's reliable future resources." *Id.* at 490. The Superior Court cited *Goldberg v. Goldberg*, 698 So.2d 63 (La.App. 4th Cir.1997) as holding that a court considers an inheritance when determining alimony because it must examine the entire financial condition of the parties. While this is true, the Louisiana court did not hold that the inheritance was income. The Superior Court also relied on *Ford v. Ford*, 1998 WL 730201, 1998 Tenn.App. LEXIS 703 (Tenn.Ct.App.1998) for the proposition that money received by inheritance may be considered income when it is regularly distributed and that a one-time distribution from a life-insurance trust received before the filing of a support petition is not income available for support. However, the distributions that Mr. Ford received

from a trust fund established under his mother's will more closely resemble "income from an interest in an estate" than a lump sum inheritance. Furthermore, the Tennessee court's rationale for not considering the insurance proceeds in Mr. Ford's income for child support purposes was the lack of evidence that he would receive additional insurance proceeds in the future. Accordingly, the decision in *Ford* militates against, rather than supports the decision of the Superior Court in the instant matter.

The sole case from another jurisdiction cited by the Superior Court that supports its position is *Forsythe v. Forsythe*, 41 Va. Cir. 82 (Cir. Ct. of Fairfax County, Va.1996). In *Forsythe*, the court held that although an inheritance is not included in the statutory definition of "gross income" set forth in 20–108.2(C) of the Code of Virginia, the definition does include gifts. Because an inheritance is a testamentary gift, the court concluded that an inheritance, like a gift given during the donor's lifetime, is income. This analysis is of limited value to the interpretation of the relevant Pennsylvania statute because Section 4302 of the Domestic Relations Code does not include "gifts" in the definition of income.

In light of the fact that we can find no principled way of fitting the corpus of an inheritance into the statutory definition of "income", we hold that it may not be so included. However, this does not mean that an inheritance will not affect the amount of support to which a child may be entitled. The Support Guidelines provide that in deciding whether to deviate from the presumptive amount of support determined by the Guidelines, the trier of fact shall consider, *inter alia,* the *assets of the parties* and other relevant and appropriate factors, including the best interests of the children. Pa.R.C.P. 1910.16–5(b)(5),(9)(emphasis added).[8] Rule 1910.16–5(a) requires the trier of fact to provide written reasons for, and

8. Pa.R.C.P. 1910.16–5 was adopted December 8, 1998, effective April 1, 1999. It incorporates former Rule 1910.16–4, which was in effect at the time that the trial court issued its decision in the instant matter.

findings of fact justifying the amount of the deviation. Therefore, where the fact finder determines that an inheritance affects a payor's financial obligations by making more income available for support, an upward deviation is appropriate.

■ Accordingly, although the corpus of an inheritance is not included in a payor's income available for support, it may be considered when adjusting a support obligation pursuant to Pa.R.C.P.1910.16–5.

## CONCLUSION

The Superior Court abused its discretion in determining that the inheritance that DeRoss received fits within the definition of income set forth in Section 4302 of the Domestic Relations Code. Accordingly, we reverse the judgment of the Superior Court and remand this matter to the trial court for proceedings consistent with this opinion.

Justice EAKIN did not participate in the consideration or decision of this case.

Justice CASTILLE files a dissenting opinion in which Justice NIGRO joins.

CASTILLE, Justice, dissenting.

At issue in this discretionary appeal is whether a cash distribution of $83,696.50, issued to appellant/father as the sole beneficiary of his mother's estate, qualifies as "income" for purposes of appellant's obligation to support his minor child under the Domestic Relations Code (Code), 23 Pa.C.S. § 101 *et seq.* The Code defines income as including, *inter alia,* (1) "income from an interest in an estate," (2) "other entitlements to money or lump sum awards, without regard to source," and (3) "any form of payment due to and collectible by an individual," also without regard to source. *Id.* § 4302. The majority concludes that the $83,000 plus in cash was not income under

any of these provisions. In so holding, the majority focuses primarily on the fact that the legislative definition of income does not include the word "inheritance." Because the majority's reading of the statute is contrary to its plain meaning and creates an unnecessary conflict between the statute and our procedural rules, I respectfully dissent.

In any case involving statutory interpretation, the inquiry must begin with an examination of the plain language of the relevant provision(s). *Sphere Drake Ins. Co. v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510, 513 (2001); 1 Pa.C.S. §§ 1903(a), 1921(b). *See also Commonwealth v. Burnsworth,* 543 Pa. 18, 669 A.2d 883, 886 (1995) (when language of statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning); *Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 614 A.2d 218, 220 (1992) (object of all interpretation and construction of statutes is to ascertain and effectuate intention of General Assembly; best indicator of legislative intent is plain language of statute). Whatever vagaries may attend "inheritances" that do not result in a distribution of cash need not concern us here because, under any fair reading of the plain language of this statute, the distribution in this case must be deemed to be income.

Appellant's mother's primary asset was her house. Her estate did not convey the house itself to appellant but, instead, sold the house and distributed the unencumbered proceeds of that sale to appellant. The distribution provided appellant with the most liquid of assets, as proven by the fact that, on "the very day" he received the proceeds from the sale of the house, he "used them to purchase a home for himself and his current wife." Brief of Appellant, 4. The issue before this Court is whether the lower courts erred in determining that this cash windfall should also be deemed available to meet the basic needs of appellant's minor daughter from a previous relationship.

The Code's definition of income is varied and intentionally quite broad. It encompasses such specific and traditional

forms of income as "compensation for services," "interest" income, and social security benefits. The definition also includes the no-less specific, though perhaps less common, "income from an interest in an estate or trust." The statute goes on to designate as income such broad categories as "other entitlements to money .... without regard to source" and "any form of payment due to and collectible by an individual," again without regard to source. In my view, the substantial cash distribution to appellant here qualifies as income under a plain reading of all of the latter three sub-definitions.

Since the provision governing an interest in an estate is the most specific of the three and is the primary focus of the majority opinion, I shall begin with it. The provision does not read "interest income" from the "corpus" of an estate or trust. Rather, it speaks broadly of any "income" which arises "from an interest" in an estate or trust. Appellant's "interest" in his mother's estate derived from his status as her sole beneficiary. That interest resulted in a cash distribution to appellant of over $83,000. A plain reading of the statute obviously requires the conclusion that this distribution was "income." The General Assembly did not have to employ the word "inheritance," and then address the various permutations that might arise when inheritances are involved, in order to make more plain its obvious intention.

In concluding that this provision does not apply to cash distributions from an estate, the majority finds significance in the fact that inheritances are common sources of income, and yet the General Assembly did not address inheritances by name. Initially, I would dispute the premise that inheritances are "common sources of income." Nowhere in the record below is this premise supported. Were I called upon to take judicial notice of this proposition, I would conclude just the opposite. Even so, not all inheritances—and hence not all interests in an estate-involve income or income—generating bequests. Personal belongings, letters, mementos, family photographs and the like are all common bequests which, though

they may have a very real and powerful emotional value, frequently have no discernible economic value. This provision of the Code wisely does not concern itself with such minutiae, but focuses instead on interests in an estate that produce income. Appellant's interest in this particular estate unquestionably produced such income and it should be no less available to the support of appellant's minor daughter than to the support of his "current" family.

Even if the statute drew the distinction perceived by the majority between the "corpus" of an inheritance, which the majority would deem not to be income, and income derived from a corpus, which the majority apparently would include as income, the majority's conclusion when applied to the facts in this case is erroneous. Under this approach, the "corpus" presumably would be appellant's mother's house. But appellant did not simply pass into ownership of the house and live in it or retain it; instead, the house was converted into ready cash as part of the estate and the proceeds were distributed to appellant. Under the majority's reading of the statute, these proceeds should be deemed "income" to appellant derived from his interest in the "corpus" house that passed through his mother's estate and, thus, should be available for his support obligation.

Although I believe that the "interest in an estate" provision controls here, I also write to note my view that, even if it did not, I still could not agree with the majority opinion. As I have noted above, there are two broader definitions of income in the Code, either one of which plainly captures the cash distribution to appellant. These provisions speak of entitlements or payments due "regardless of source," which obviously is broad enough to include inheritances. Whether the inheritance distributed to appellant in this case is deemed "an entitlement to money or lump sum award" or "any form of payment due to and collectible by an individual" it falls squarely within the General Assembly's conception of income from all other sources.

The majority rather casually dismisses these two provisions in a single sentence, again focusing on the absence of the apparently talismanic word "inheritance." However, legislative intent can not be clearer in this area. As to each of these provisions, the General Assembly specifically designated that the definition applied **regardless of source.** Inheritances are merely one of innumerable potential sources of entitlement to money or forms of payment due and collectible. To find controlling significance in a perceived **omission,** where the General Assembly speaks in broad terms which encompass **all** sources, turns statutory construction on its head. I cannot join in the majority's unilateral creation of an "inheritance exception" to the broad, plain statutory language.

The majority further justifies its creation of an inheritance exception by noting its understanding of how "intact" families allegedly "treat inheritances." According to the majority:

> Including an inheritance in income available for support does not reflect how families in which parents live together treat inheritances. In an intact family, the receipt of a lump sum is likely to be used for purchases, investments or savings, and not for meeting living expenses. Therefore, considering the entire inheritance as income available for support is contrary to the purposes of the guidelines.

Majority op. at 286. I do not purport to know how intact families generally put inheritances to use nor does the record here illuminate such a sweeping conclusion; but I suspect that, to the extent there is any discernible "likelihood" in this area at all, it has more to do with the relative prosperity and needs of the particular family, and not whether the family is "intact" or not. I also suspect, again *de hors* this record, that there are plenty of families who spend inheritances on basic needs such as housing, automobiles, and education, rather than investing the money. In point of fact, appellant here illustrates the latter proposition where he spent his inheritance on a house, a basic living expense. I do not see how the majority's unsupported assumptions about inheritances illus-

trate any conclusion about the proper interpretation of the Code.

Finally, I would also note that the majority's ultimate holding is problematic in its own right. The majority essentially holds that appellant's cash inheritance is not "income" under the Code, but nevertheless may qualify as an "asset" under the support guidelines, which would warrant an upward deviation. The majority's conclusion in this regard raises a question of whether this Court's procedural rules can, or should, establish a substantive support consequence where the Code itself, under the majority's construction, has not. By ignoring the plain meaning of the statute, the majority creates an unnecessary discrepancy between the statute and this Court's procedural rules.

In summary, I see no error in the conclusion of the courts below that the cash distribution to appellant here was income that was available in a calculation of his support obligation.[1] Accordingly, I respectfully dissent.

Justice NIGRO joins this dissenting opinion.

1. There is also an issue as to the propriety of trial court's calculation of the support order, which allocated the lump sum over the period of the child's minority, as opposed to the year following the receipt of the lump sum. The allocation of a lump sum inheritance is within the discretion of the trial court. *See* Note to Pa.R.Civ.Pro. 1910.16–2(a)(8) ("The trial court has discretion to determine the most appropriate method for imputing the lump-sum awards as income for purposes of establishing or modifying the party's support obligation"). At the time of the allocation, the child was 18 months from reaching majority. In my view, allocating the award over 18 months rather than 12 months was not an abuse of the trial court's discretion.