Nicole DREVENIK, Appellee,

v.

Dominick NARDONE, Jr. as Trustee
for John Nardone, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 7, 2004.
Filed Nov. 17, 2004.

Elizabeth J. Bartolai, Bear Creek, for
appellant.

Donald T. Rogers, Wilkes–Barre, for ap-
pellee.

BEFORE: FORD ELLIOTT, BECK
and POPOVICH, JJ.

the same cause of action within the applicable
statute of limitations period. *Id. (citing* 3

Goodrich–Amran 2d § 1037(a):7).

OPINION BY POPOVICH, J.:

¶ 1 Appellant Dominick Nardone, Jr., trustee for John Nardone, his brother, appeals the order entered on April 12, 2004, in the Court of Common Pleas of Luzerne County, that directed Appellant to pay Mr. Nardone's child support arrears from the principal and income of the spendthrift trust established for Mr. Nardone's benefit by their mother's will. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are set forth in the trial court's opinion of June 14, 2004, as follows:

This matter originated on February 12, 1996, when the [c]omplainant, [Appellee] Nicole Drevenik, filed a civil [c]omplaint for support against [Mr. Nardone] for the support of their two children, Joseph Drevenik, born September 18, 1986, and Jason Drevenik, born November 29, 1987. After a support conference and [hearing] before a [master in support], an [o]rder was entered for the support of the minor children on August 15, 1997, in the amount of $200.00 per month. Later modification petitions reduced this amount by [o]rder of March 16, 2000, to $140.00 per month in support and $20.00 per month on arrears.

Subsequently, because [Mr. Nardone] did not pay any child support for more than a year, a petition was filed to show cause why the assets of a trust held for [Mr. Nardone] should not be used for support payments of his children. On March 3, 2004, Mr. Nardone appeared before [the trial court] owing child support in an amount just over $2,411.00. Mr. Nardone acknowledged that he owed child support, that he wished to pay off this amount, and was willing to cooperate with the Commonwealth to the fullest extent. Counsel for [Appel-lant] explained that a [s]pendthrift [t]rust, of which [Mr. Nardone is the beneficiary] was at the heart of the problem. Inez L. Nardone, [Mr. Nardone's mother (decedent)], died on April 20, 2002, in Luzerne County. By her [l]ast [w]ill and [t]estament, she left fifty percent of her net estate to [Appellant] and fifty percent to [Appellant] in trust for [Mr. Nardone]. Item III of decedent's will states in part:

[. . .] I give, devise, and bequeath my entire estate, whether real, personal, or mixed, of every kind, nature, and description whatsoever and wherever situated, as follows:

* * *

B. Fifty (50%) percent to my son, [Appellant], in trust for my son, [Mr. Nardone]. [Appellant] shall serve without bond. [Appellant] shall have total control over this [t]rust and apply such amount of income and principal as he, in his sole discretion, deems proper for the support, education, and welfare of my son, [Mr. Nardone]. I direct that this sum be invested safely and wisely in the sole discretion of [Appellant]. I further direct that my son, [Mr. Nardone] shall have no right to withdraw any funds from this trust.

Although the complete and total amount of the trust assets [has not been calculated and is, therefore, unknown], records from the Luzerne County Recorder of Deeds Office indicate that on August 19, 2000, [decedent's] home was sold for $94,900.00. Therefore, approximately half of this amount was placed in trust for [Mr. Nardone].

By order of April 12, 2004, [the trial court] found [Mr. Nardone] in arrears of his child support obligation in the

amount of $2,456.34. [Appellant] was directed to make immediate payment of all arrearages and to make continuing monthly payments of $140.00 by the 28th of each month. Furthermore, [Appellant] was ordered to provide a complete account of the assets and expenditures of the trust held by [Appellant] on behalf of [Mr. Nardone].

Trial court opinion, 6/14/2004, at 1–3.

¶ 3 Appellant filed a timely notice of appeal from the trial court's April 12, 2004 order. Thereafter, Appellant filed an ordered statement of matters complained of on appeal. The trial court did not file a corresponding opinion after Appellant filed his statement of matters, but it did so upon the direction of this Court. *See Drevenik v. Nardone,* 644 MDA 2004 (Pa.Super. filed 6/16/2004) (unpublished order).

¶ 4 The sole issue Appellant present for our review is whether the principal of a trust may be invaded by a trial court in order to satisfy outstanding child support arrears.

 ¶ 5 Our review of Appellant's issue is governed by the following standard:

In our appellate review of child support matters, we use an abuse of discretion standard. A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure [g]overning [a]ctions for [s]upport . . .or abused its discretion in applying these Rules. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused. This is a limited role and, absent a clear abuse

of discretion, the appellate court will defer to the order of the trial court. A finding of abuse is not lightly made but only upon a showing of clear and convincing evidence.

*Dennis v. Whitney,* 844 A.2d 1267, 1269 (Pa.Super.2004) (citations omitted).

¶ 6 Appellant contends that the trial court abused its discretion when it ordered that the trust's principal and income be invaded to pay Mr. Nardone's child support arrears because the Pennsylvania Supreme Court's holdings in *Humphreys v. DeRoss,* 567 Pa. 614, 790 A.2d 281 (2002), and *Maher v. Maher,* 575 Pa. 181, 835 A.2d 1281 (2003), instruct that trust principal cannot be utilized as "income" for support purposes. We disagree.

¶ 7 It is clear that the holdings of *Humphreys* and *Maher* are inapplicable to the present case. *Humphreys* and *Maher* held that the corpus of an inheritance could not be included as "income" by the trial court when it calculates a support obligation pursuant to the Support Guidelines. *Humphreys,* at 624, 790 A.2d at 287–88; *see also Maher,* at 189–90, 835 A.2d at 1286–87. In the present case, as noted by the trial court, Appellee is not seeking a greater support award or a recalculation of Mr. Nardone's income in light of his trust assets. Rather, Appellee seeks payment of accrued support arrears. Accordingly, neither *Humphreys* nor *Maher* offer guidance in this case. Therefore, Appellant's argument fails.[1]

 ¶ 8 We acknowledge that the corpus of the inheritance in question is in the nature of a spendthrift trust, and, as such, the assets of the trust are insulated from incursions by creditors until such time those assets are delivered into the hands of the beneficiary, in this case, Mr. Nar-

---

1. Appellant makes no argument with respect to the applicability of 20 Pa.C.S.A. § 6112

(regarding the attachment of *income* of spendthrift trust for purposes of support).

done. 10 *Summary of Pennsylvania Jurisprudence 2d,* Probate, Estates and Trusts § 31:7. Nevertheless, we are satisfied that the trial court did not abuse its discretion when it ordered Appellant to distribute trust assets to pay Mr. Nardone's support arrears.

¶ 9 Reference to the testamentary language indicates that the spendthrift trust was established for the "support, welfare, and education" of Mr. Nardone. Clearly, the idea of providing support in the spendthrift trust, *i.e.,* payment of daily living expenses, includes *all* reasonable living expenses that one would occur in the course of daily living, such as those involved in rearing children. Of course, children in our society can never be characterized as an "expense," but the very existence of the Support Guidelines makes it clear that parenthood carries with it an obvious economic responsibility to care for a child's daily needs, which responsibility is coterminous with the parent's need to support himself or herself. As such, it becomes clear that the language of the trust permits the use of both trust principal and income to support Mr. Nardone's children, because, if they lived with him, trust assets would be used to meet their daily needs as well. Therefore, we are satisfied that the trial court did not abuse its discretion.

¶ 10 Our reasoning is buttressed by the seminal case of *Moorehead's Estate,* 289 Pa. 542, 137 A. 802 (1927). In *Moorehead's Estate,* Gertrude F. Moorehead (Gertrude) filed a petition in the Orphans' Court of Allegheny County seeking support for herself from the assets held for her estranged husband, H. Watt Moorehead (Watt), in the spendthrift trust established by Watt's grandmother, Mary Moorehead (the testatrix). *Moorehead's*

*Estate,* at 544, 137 A. at 803. The trial court ruled that the assets should be available for Gertrude's support, and both parties appealed.[2]

¶ 11 Writing for a unanimous Court, Mr. Justice Frazer opined that, at the time of the writing of the testamentary trust, the testatrix's intent was to protect Watt from wasting his income by extravagance and dissipation but not to deliberately enable Watt to avoid the responsibility of support to his family placed on him by the law of this Commonwealth. *Moorehead's Estate,* at 547–48, 137 A. at 804–05. As support for his conclusion, Mr. Justice Frazer noted that the codicil that established the spendthrift trust was authored after Watt's marriage to Gertrude and that there was no indication of animosity toward Gertrude by the testatrix evident in her will and codicil or in the record. *See id.,* at 547–48, 137 A. at 804–05. Moreover, even if a technical reading of the language of the spendthrift trust would permit Watt from avoiding his responsibilities to his family by virtue of the creation of the spendthrift trust, such a result was forbidden by the public policy of this Commonwealth. *Id.,* at 551, 137 A. at 806. Lastly, Mr. Justice Frazer reasoned that the nature of a support obligation was not a "debt" because it was not founded upon a legal contract but, rather, a societal obligation. *Id.,* at 553, 137 A. at 806. Thus, an instrument that places a testamentary gift out of bounds from creditors for the collection of "debts" had no effect to preserve that property from the incursion of family members seeking payment of a support obligation. *See id.,* at 553, 137 A. at 806. Therefore, our Supreme Court affirmed the order of the Orphans' Court.

---

**2.** It is not mentioned in the opinion whether the trial court's ruling was upheld by this Court on direct appeal, or whether the Pennsylvania Supreme Court acted as the court of first appeal in the case.

¶ 12 We observe that society places an even greater obligation on a parent to support his or her children than on a spouse to support another spouse. Therefore, the rationale of *Moorehead's Estate* applies with even greater force to the present case. Inasmuch as our Supreme Court has concluded that the term "debt" does not encompass support obligations, the spendthrift trust cannot act to shield the assets of the trust from collection by Appellee for the benefit of Mr. Nardone's children. *Moorehead's Estate*, at 553, 137 A. at 806. Further, similar to the facts in *Moorehead's Estate*, the decedent lived long after the birth of Mr. Nardone's children, and no animosity was evident toward them or their mother, Appellee, in the will that established the spendthrift trust. However, even if it was the decedent's intent to deprive her grandchildren of the assets within the trust, the public policy of this Commonwealth would forbid such a result. *Cf. Moorehead's Estate*, at 551, 137 A. at 806. It is also evident from the record that Mr. Nardone recognizes his responsibility to his children and agrees that Appellant should release the assets held in trust for him to them for their support, which assets would, in any event, be available for the children's support were they to reside with Mr. Nardone.[3] Accordingly, we are satisfied that the trial court did not abuse its discretion, and we affirm its order.

¶ 13 Order affirmed.

---

**3.** We also deem it important to note that, to this date, there has been no accurate account- ing of the assets in the spendthrift trust by Appellant.