**Schader v. Schader**

C.P. of Delaware County, No. 2011-01137; 1645 EDA 2014

*Robert A. DeLuca,* for appellant.
*Kristen Rushing Daniels,* for appellee.

DOZOR, *J.,* Aug. 6, 2014—

NATURE AND HISTORY OF THE CASE:

This appeal is a direct appeal from this court's final order of support entered on April 30, 2014.

This court notes that on April 10, 2014, this court held

a *de novo* hearing and considered during that hearing the following filings: a petition for contempt for failure to pay spousal support (filed by DRO), appellee's support appeal of master's September 4, 2013 order, appellee's answer filed on January 14, 2014, appellant's self represented petition for emergency relief requesting a support contempt hearing filed on March 18, 2014, appellee's answer to appellant's petition for emergency relief filed on March 19, 2014.

After considering all of the evidence presented on April 10, 2014 and a review of all the documents filed and received by the court, this court recalculated the support guidelines and issued a final support order on April 30, 2014.

Appellant filed a motion for reconsideration of the final support order on May 14, 2014; this motion for reconsideration raises the same issues raised in this appeal. On May 16, 2014, appellant filed an amended petition for reconsideration of this court's final support order dated April 30, 2014. This amended petition for reconsideration was filed simply because the initial motion for reconsideration was filed under the divorce/ equitable distribution docket number and not the support docket number, which is the only change between the motions for reconsideration. Thereafter, on May 22, 2014 this court issued an order denying appellant's motion for reconsideration.

On May 30, 2014, appellant/wife filed the appeal in this matter. On June 9, 2014, this court issued a 1925(b) request for a concise statement of matters complained of

on appeal. On June 19, 2014, appellant filed her statement of matters complained of on appeal. After reviewing the filed "Plaintiff's Statement of Errors Complained of," this court discovered that the nineteen paragraph, three page document truly only raises three issues of error regarding this court's support order. Appellant's allegations of error are as follows:

1.   This court incorrectly relied on husband's evidence related to his income, including husband's employment, as there was no 2013/2014 tax returns provided to the court.

2.   This court failed to consider that husband improperly paid his support obligation to wife utilizing the income he received from his rental property.

3.   This court failed to consider that husband has a significant inheritance that he is able to utilize and as such should have been considered income for support purposes.

## FACTS:

The parties were married on October 12, 1985 and have four (4) emancipated children. Appellant/wife filed a complaint in divorce and a complaint in custody on June 24, 1994; thereafter, the parties reconciled. On August 17, 2007, the parties formally separated. Appellant completed the ninth grade (9th) and thereafter received her General Educational Development (GED) High School Equivalency Degree and during the marriage, appellant was the primary caregiver to the parties' four children.

Appellee is a high school graduate, who completed college at St. Louis Washington University before going to Dental School at Temple University. Appellee was licensed as a dentist during the marriage. During the marriage, appellee bought property located at 248 South 21st Street, Rittenhouse Square, Philadelphia in 1993, with a loan from his father and as such the property was originally titled solely in appellee's name and the parties renovated the building to accommodate appellee's dentistry practice. Appellee sold his general dentistry practice located at 248 South 21st Street, Rittenhouse Square, Philadelphia in 2005 and retained the building, which he continues to rent out. Appellee receives rent from the dental office in the amount of $3,700 a month, the second floor apartment in the amount of $2,090 a month and the third floor apartment in the amount of $1,600 a month.

After the separation of the parties, appellant was in a severe auto accident on May 9, 2008, wherein she sustained numerous serious and disabling injuries which resulted in her having several operations. Appellant requires significant medical care to this day. There was a stipulation between the parties that appellant has no earning capacity.

It is important for the calculations of support in this matter to note that this court's final order of equitable distribution was entered on May 30, 2013 and thereafter this court issued an order granting in part and denying In part plaintiff and defendant's motions for reconsideration entered June 19, 2013.[1] This court also notes that divorce

---

1. In the June 19, 2013 order this court granted reconsideration

decree was issued on August 26, 2013 by The Honorable Nathaniel C. Nichols and as such the parties were formally divorced on that date.

Appellee filed a petition to Modify APL/spousal support on July 13, 2013. Thereafter, a master issued an order on September 4, 2013, effective July 22, 2013,[2] for APL/spousal support in the amount of $3,759.60 plus 35% of the mortgage, for an additional $1017.45, with a total APL/spousal support obligation of $4,777.05 per month plus $477.57 toward arrears, thus a total monthly obligation of $5,254.75. This court noted that as of April 7, 2014, the support arrears are $21,068.62. *See* plaintiff's Exhibit, P-2. Appellee thereafter filed a timely appeal from the master's order.

This court also notes that appellee, as required by the court's final equitable distribution order of May 30, 2013, is to pay appellant's existing medical, dental and

for the limited purpose of reconsidering the alimony awarded to wife and the life insurance policy required to be provided to wife and this court ordered that husband shall pay to wife fifteen hundred dollars ($1,500) a month in alimony for fifteen (15) years, which shall be paid to wife within the first ten (10) days of each month. Further, this court ordered that husband shall procure a life insurance policy, insuring his life, naming wife the irrevocable beneficiary, for the value of the alimony referred to above. The sole purpose of the life insurance policy is to guarantee wife's alimony for fifteen (15) years, presently valued at two hundred seventy thousand dollars ($270,000). Husband is to provide wife annual proof of current life insurance policy. The value of the life insurance policy may be reduced annually in relation to the corresponding alimony paid to wife. All other issues raised in the cross petitions for reconsideration of the final order of equitable distribution was denied and all other findings of facts and conclusions of law and the terms and conditions of this court's final equitable distribution order of May 30, 2013 shall remain effective and a final order.

2. This court notes that the master's order should have been effective July 13, 2013 and there was no explanation by the parties or their counsel as to why the master's order shows the effective date of July 22, 2013.

prescription insurance coverage and/or make full payments of the COBRA for appellant's medical insurance for the full term of the COBRA that is available to appellant.

During the April 10, 2014 hearing, both parties testified, as well as Lisandra Miasonet, the Office Manager of Newtown Dentistry for Kids and Newtown Orthodontics (hereinafter "Newtown"), appellee's current employer located in Newtown, Bucks County, PA. Appellee characterizes his employment as "paid per diem." appellee testified that in addition to his new position with Newtown he continued to work for and still remains employed with Liberty Dental.

This court heard testimony from appellee that after June 21, 2013[3], he attempted to pursue part-time employment in Reading, Pennsylvania. Appellee candidly testified that he intentionally postponed the decision to begin a part time job in Reading because of the anticipation that he would be working in August or September at Newtown.

Appellee further testified that from July 13, 2013 to September 30, 2013 he had received unemployment compensation in the amount of $573 per month and an additional $2,600 from Liberty Dental thus providing him with a total gross monthly income in the months of July, August and September of 2013 of $3,173.

Husband began his new full time position with Newtown on October 1, 2013. *See* defendant's Exhibit,

---

3. This court notes that from July of 2006 until June 21, 2013, appellee worked at Einstein Philadelphia (formerly known as Albert Einstein Medical Center) and at Liberty Dental as a dentist and orthodontist.

D-5. Since October 1, 2013, appellee has been employed at Newtown while still employed with Liberty Dental. Appellee entered into a written contract with Newtown on November 1, 2013. Per the employment contract with Newtown, appellee would receive 38% of his production, less any lab fees collected by Newtown. Appellee credibly testified that he was to receive this 38% because that was what the prior orthodontist had been receiving from Newtown and because appellee anticipated buying into the Newtown practice. Appellee's contract with Newtown was to expire on December 31, 2014. This court notes that because of the structure of appellant's payment from Newtown, based on a percentage of his production less the lab fees, appellant is paid in the following month that he provides the services.

Appellee received his first check in November of 2013 for $18,000, for approximately 10 days of employment that occurred in October of 2013. On December 5, 2013, appellee received a second check from his employer in the amount of $33,244.50, for work he provided Newtown in November of 2013.

Appellee provided appellant with his 1099 form for 2013 and this was entered into the record during the Support Hearing. *See* Exhibit P-3. Appellee's 1099 form for the calendar year 2013 demonstrated that appellee's total compensation received from Newtown was $51,244.50.

Appellee credibly testified that in January of 2014 his production was $89,463.88. As a result of his employment contract he received 38% of the $89,463.88 less the lab fees; therefore, appellee received a paycheck from

Newtown in the amount of $33,509.10 in income.

On or about February 6, 2014, appellee received a check from Newtown in the amount of $11,753.95. This check was significantly lower than the prior month's salaries because this check had been adjusted downward since Newtown had discovered that they had overpaid appellee for the work he had completed in November 2013. See plaintiff's Exhibit, P-3 (Newtown a record of which includes his 1099). This court heard credible evidence from appellee that in December 2013 his true earnings after making the appropriate corrections for the overpayment was $30,931.46, which was paid to appellee on February 6, 2014.

Appellee credibly testified that in February of 2014 his production was $65,516.79 and as a result of his employment contract he received 38% of the $65,516.79 less the lab fees and therefore appellee received a paycheck from Newtown in the amount of $21,297.78 in income.

Husband candidly testified that when he entered into employment in October of 2013 with Newtown and when he signed the contract in November of 2013 he intended to buy into the Newtown practice; however, this "buy in" did not occur. Appellee credibly testified that when he realized he was not going to buy into the practice he wanted a more stable position at Newtown. Appellee also credibly testified that one reason he was able to take the position at Newtown was because the practice did not want to pay his predecessor the 38% because they were losing money that way. Therefore, appellee's employment contract was renegotiated in April of 2014. After the renegotiation,

54

appellee's formula for compensation was modified slightly, appellee is still paid per diem; however, appellee is now paid 33% of his net collections/production, after lab fees and appellee's contract was stable as he is now contractually employed with Newtown until December 31, 2017. *See* defendant's Exhibits, D-5 and D-6.

Appellee candidly testified that in the last two months he now averages a gross monthly salary of approximately $21,000 with Newtown. In addition to appellee's continued "full time" employment with Newtown he has continued with his part time employment at Liberty Dental providing him with an additional $2,600 per month.

Therefore, husband's average gross monthly salary since the renegotiated contract with Newtown is approximately $23,600 a month.

A copy of husband's 2012 1040 US Federal Tax Return was admitted into evidence, as well as a copy of husband's 2013 1099 "Miscellaneous Income" Form. See plaintiff's Exhibits, P-3 and 6.

Appellee testified that following the death of his mother and father, appellee has two separate inheritances. Appellee has an established trust from his father, this trust generates income which is retained in the trust; however, appellee does receive distributions from that trust yearly. Appellee also testified that he received an inheritance from his mother that is not retained in a trust. Appellee further testified that in December of 2013 he received a lump sum distribution from an inheritance in the amount of $57,500; prior to the payment of that inheritance distribution, appellee had access and received $15,000 of trust income

to pay his attorney's fees. Appellee testified that as a result of an inheritance he had received he has the availability and control of obtaining up to approximately $57,500 per year in trust income, as well as the opportunity, at his liberty to invade, the principle of the trust.

In issuing the April 30, 2014 final support order, this court determined that appellee had failed to comply with his support obligations especially in light of the opportunity he can receive trust income, as well as using any portion of the inheritance that he received in December of 2013 in the amount of $57,500 and his failure to invade the principle of his trust, all confirm that appellee willfully failed to comply with his support order. This court notes that while the inheritance and trust were not calculated in terms of income for appellee, appellee always had the financial resources to keep his support obligations current. This court further determined that prior to appellee beginning employment (October 1, 2013) with Newtown Orthodontics, he intentionally failed to obtain or maintain appropriate employment; intentionally delayed and postponed available employment in Reading, PA, and intentionally chose not to utilize his other sources (i.e.: trust income and inheritance proceeds) of income to keep his support obligations current.

This court had previously, in the final equitable distribution order, determined that appellee's two employment positions in 2012 provided him with a gross income of approximately $194,200; in paragraph 16 on page 25 said order found appellee had a minimum earning capacity of $160,000. Therefore, in the final support order of April 30, 2014, this court determined that from

July 13, 2013 to September 30, 2013, when appellee was "unemployed" that based upon his employment history, opportunity for employment, education, experience, training and earning history the court was required to impute an income equal to appellee's earning capacity, of $160,000 per year.

On May 13, 2009 Montgomery County Judge Daniele had ordered that the rental income be escrowed and subject to equitable distribution appellee's rental income generated from a property at 248 S. 21st Street, Rittenhouse Square, Philadelphia.

Thereafter on May 30, 2013 this court's final equitable distribution order found and ordered, see paragraph 10b, page 16, that all rental income shall be escrowed with appellant receiving a bi-monthly accounting and thereafter equitably divided 60% to appellant and 40% to appellee. Therefore, this court determined that the Rental income shall not be included in appellee's monthly income calculations.

This court's determination of appellee's support as set forth in the final support order of April 30, 2014 states as follows:

B. Calculations

1.  Due to the fluctuations in husband's income during the calendar year 2013, there are three (3) different periods of time which this court must address.[4]

---

4. This court realizes that there could be four calculations since the Statutory Guidelines changed on August 9, 2013 and therefore there should be one calculation from July 13, 2013 to August 8, 2013 and another from August 9, 2013 to September 30, 2013; however, the change

2. This court further determines that there is *no mortgage deviation applicable*. This court notes that in the May 30, 2013 final equitable distribution order, wife was awarded the martial residence.

3. The first time period for calculations is from July 13, 2013 (the date husband filed his petition to modify his APL/Support) until September 30, 2013 (the last date before husband's new employment with Newtown Orthodontics began). During this time period, husband was receiving monthly unemployment compensation of $573 plus an additional $2,600 from Liberty Dental.

4. This court determines that although husband was no longer working for Einstein, he had the opportunity to begin another job wherein he would have been earning substantially more than his unemployment compensation and as a result this court determines that husband had a minimum earning capacity of $160,000 per year thus a gross monthly income of $13,333 and net monthly income of $9,130 dollars.

5. Wife has a zero net monthly income.

6. The support calculations retroactive from the date that husband filed his petition to modify support, July 13, 2013 until September 30, 2013 are as follows,

CHART (1) ONE

| HUSBAND'S 2013 INCOME | WIFE'S 2013 INCOME |
| --- | --- |
| $160,000 (Imputed) | $0 |
| -$50,430.36 (tax) | |

in these two calculations was so de minumus as to be unnecessary for time period set forth in this order.

58

$ 109,569.64 Net yearly Income        $0 Net Income

$ 109,569.64 /12=$ 9,130.80        $ 0

$ 9,130.80 Net Monthly        $0 Net Monthly

Joint Monthly Net ($ 9,130.80 + $0) = $ 9,130.80

July 13, 2013 until September 30, 2013 SPOUSAL SUPPORT

Husband's net Monthly: $ 9,130.80

Wife's Income Deduction: -$0

$9,130 x .40 = $ 3,652

July 13, 2013 until September 30, 2013 SUPPORT ORDER = $ 3,652 MONTHLY

7. This court notes that for the next two charts, this court is using the gross monthly income as provided by husband during the hearing held on April 10, 2014.

8. The next calculation period is from the date husband began his employment with Newtown Orthodontics (October 1, 2013) and the date of husband's new, renegotiated contract with Newtown Orthodontics began (March 31, 2014).

9. The court finds that from Newtown Orthodontics husband has a gross monthly income of $22,500 plus an additional $2,600 from Liberty Dental that is a total gross monthly of $25,100 and a net monthly income of $ 16, 648.

10. Wife has a zero net monthly income.

11. The support calculations retroactive from the date husband began his employment with Newtown Orthodontics, October 1, 2013 until March 31, 2014 are as follows, CHART (2) TWO:

CHART (2) TWO

| HUSBAND'S 2013-2014 INCOME | WIFE'S 2013-2014 INCOME |
|---|---|
| $25,100 Gross Monthly Income | $0 |
| -$ 8,451.37 (tax) | |
| $ 16,648 Net Monthly Income | $0 Net Income |

Joint Monthly Net ($16,648.00 + $0) = $16,648.00

October 1, 2013 until March 31, 2014 SPOUSAL SUPPORT

Husband's net Monthly: $16,648.00

Wife's Income Deduction: -$0

$16, 648.00 x .4 = $ 6,659

October 1, 2013 until March 31, 2014 SUPPORT ORDER = $ 6,659 MONTHLY

12. The final calculation is the period from the date husband when husband renegotiated contract with Newtown Orthodontics on April 1, 2014 and into the future.

13. husband's renegotiated contract provided husband with a monthly gross income of $21,375 plus $2,600 a month from Liberty Dental that is a total gross monthly income of $23,975 and a net monthly income of $ 15,987.62

14. wife has a zero net monthly income.

15. The Support Calculations retroactive from the date husband's renegotiated contract with Newtown Orthodontics began on April 1, 2014 and into the future, until further modified by the court are as follows,

CHART (3) THREE

| HUSBAND'S 2014 INCOME | WIFE'S 2014 INCOME |
|---|---|
| $23,975 Gross Monthly Income | $0 |

-$ 7,987.38 (tax)

$15,987.62 Net Monthly                              $0 Net Income

Joint Monthly Net ($ 15,987.62+ $0) = $ 15,987.62

April 1, 2014 and until further Court Order SPOUSAL SUPPORT

Husband's net Monthly: $ 15,987.62

Wife's Income Deduction: -$0

$ 15,987.62 x .4 = $ 6,395

April 1, 2014 until further Court Order SUPPORT ORDER = $ 6,395 MONTHLY

## C. Conclusions

1. Husband's arrears should be recalculated based upon this order and recalculated based upon the Support amounts determined below.[5]

2. In accordance with the above calculations, the TOTAL SUPPORT AMOUNTS for the three (3) different periods of time which this court must address are as follows:

    a.    $3,652/month + 10% Arrears ($ 365.20), if arrears exist, for the period of July 13, 2013 - September 30, 2013. See CHART (1) ONE above.

    b.    $ 6,659/month + 10% Arrears ($665.90), if arrears exist, for the period of October 1, 2013 -

5. This court heard some testimony that as a result of an order from the support master, husband paid some mortgage payments directly to the mortgage company for mortgage payments for the marital home which was awarded to wife in this court's May 31, 2013 final equitable distribution order. These mortgage payments were over and above the ordered support obligation (which included 1/3 of the mortgage payment). The record does not reflect what months or the amount of money husband paid the mortgage directly to the mortgage company. Thus, husband can receive no credit within this order for these payments. Upon a petition filed by either party and following a limited hearing on the matter, the court may consider a credit towards husband's arrears.

March 31, 2014. See CHART (2) TWO above.

    c.    $ 6,395/month + 10% Arrears ($639.50), if arrears exist, for the period of April 1, 2014 and until further court order. See CHART (3) THREE above.

3. Husband is to pay wife's existing medical, dental and prescription insurance coverage and/or make full payments of the COBRA for wife's medical insurance for the full term of the COBRA that is available to wife, *uninterrupted*, until further order of the court, as required by the equitable distribution order of May 30, 2013.

4. In the event that husband remains in contempt and fails to timely pay his APL/Supposal Support until further order of the court, this court will entertain a petition for contempt, sanctions, attorney fees as well as the imposition of a sentence, if necessary.

5. Within *60 days* of the finality of the equitable distribution order, husband shall pay the arrears in full.

See "Final Support Order" dated April 30, 2014, pgs. 7-11.

## DISCUSSION:

As of the date of this opinion there is an appeal pending with the Superior Court regarding this court's final equitable distribution order (*Schader v. Schader*, 2492 EDA 2013 (No. 94-7374)). This court notes that many of the issues raised in that pending appeal are consistent with the issues in this appeal. As previously stated this court has consolidated the nineteen issues raised in the concise

statement of matters complained on appeal to three issues.

A. *The court did not incorrectly rely on appellee's evidence and testimony related to his income, including appellee's employment and inheritance, as there were no 2013 tax returns provided to the court.*

This court did not incorrectly rely on the evidence and testimony presented by the parties during the hearing held on April 10, 2014. This court notes that the hearing on this support matter was first scheduled in January of 2014 and then in March of 2014 and those hearings *were continued* at the request of appellant's counsel. This court notes that the hearings were not continued due to a request for continued discovery or failure to comply with discovery requests. This court notes that at no time prior to *or* during the hearing did appellant argue that appellee's 2013 tax returns were necessary such that a continuance of the hearing should be granted. This court notes that appellant never requested a continuance of the April 10, 2014 hearing nor asserted during the hearing that the 2013 tax returns of appellee were vital to the case during the hearing. Even if appellant had requested a continuance for appellee's 2013 tax returns, this court would not have granted such a request, as this court was able to determine appellee's current income (or income at the time of the April 10, 2014 hearing) based upon the credible testimony and overwhelming and extensive evidence presented during the April 10, 2014 hearing.

This court had previously, in the final equitable distribution order, determined that appellee's two

employment positions in 2012 provided him with a gross income of approximately $194,200; in paragraph 16 on page 25 said order found appellee had a minimum earning capacity of $160,000. At that time, the court had been provided with appellee's 2012 tax return, as this court was provided with the tax return for 2012 at the April 10, 2014 hearing.

This court notes that at the time of the April 10, 2014 support hearing, appellee provided credible testimony that he did not have a 2013 tax return prepared to submit to appellant as the tax deadline of April 15, 2014 had not passed. Appellee provided credible testimony of his employment status and his earnings from October of 2013 until the date of the support hearing. Appellee also presented as evidence his 1099 form. Additionally the office manager for Newtown, Lisandra Miasonet, presented credible evidence of appellee's employment history with Newtown as well as his earnings with Newtown.

This court notes that based upon the credible testimony and evidence of appellee, which was accepted by this court, appellee currently earns approximately $23, 600 a month in gross earnings. This gross monthly figure is based upon his 33% percent of his production (less lab fee) which appellee is paid by Newtown in addition to the $2,600 a month appellee is paid by Liberty Dental. Therefore, this court was able to determine that from April of 2014 until at least December 31, 2014, appellee's gross income has increased to an average of $283,000 yearly, which is almost double the earning capacity this court set in the final equitable distribution order and

almost $89,000 over what appellee's 2012 tax return showed he earned.

B. *The court did not fail to consider that appellee improperly paid his support obligation to appellant utilizing the income he received from his rental property.*

Appellant argues that this court erred, and therefore the support order should be vacated and the case remanded for a new hearing, because this court did not consider how appellee was paying his support obligation. The record clearly and unambiguously contradicts appellant's argument. There was testimony by appellee that he had in fact paid his support obligation from his rental property account.

This court determined, as it continues to determine that where or how appellant paid his support obligation, i.e. from then rental account, was not an issue to be properly raised in support court during the de novo hearing or on the petition for contempt. During this proceeding, it was the court's obligation to determine the proper amount of support owed to wife/appellant and if appellee/husband had failed to meet his obligation at during the time of the alleged contempt. This court unambiguously determined that appellee had failed to meet his support obligations and this fact was *not* denied by appellee.

Therefore, this court did not err in failing to find appellee in contempt for paying his support obligation from the escrowed rental account.[6] This court notes that appellee

---

6. This court notes that appellee was found in contempt by this court for failing to comply with his support obligations. This court determined that appellee was in contempt of the support order as appellee

was strongly cautioned, in open court by this court, to stop providing appellant with her support payments from the rental income *and* to reconcile that account.

C. *This court did not fail to consider that appellee has a significant inheritance that he is able to utilize and as such should have been considered income for Support purposes.*

Appellant argues, as she did during her equitable distribution trial, that appellee has a significant inheritance which should be considered a factor in determining her apportionment of the marital estate as well as in determining appellee's income for the support calculations.

Initially this court notes that there was insufficient evidence presented at the trial regarding appellee's distributions from the trust and inheritance he received from his father and his mother's estates. Appellee candidly testified that he was able to take yearly distributions, which is only distributions of the interest generated, which would generally be received on December 31, 2013. Appellee credibly testified that he has not invaded the principle of the trust account and has only received distributions from the interest generated.

This court notes that a trial court's determination

---

receives money from his inheritance and trust income. This court noted that appellee credibly testified that he received in December of 2013 $57,500, which he could have utilized to pay his Support in full or pay clear his arrears. Additionally, this court determined that appellee could have invaded the principal of the trust to not have his support obligation in arrears and his failure to invade the principle of his trust. Therefore, this court determined that appellee willfully failed to comply with his support order.

regarding a support award will not be disturbed absent an abuse of discretion. *Mooney v. Doutt*, 766 A.2d 1271, 1273 (Pa. Super. 2001). Further, this court notes that "[a]n abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable." *Colonna v. Colonna*, 788 A.2d 430, 437-38 (Pa.Super.2001).

The Supreme Court of Pennsylvania has consistently held that "the corpus of an inheritance may not be considered income for purposes of calculating child support." *Maher v. Maher*, 575 Pa. 181, 189-90, 835 A.2d 1281, 1286 (2003) citing *Humphreys v. DeRoss*, 567 Pa. 614, 790 A.2d 281 (2002). This court has found no case law which expressly determines that inheritance may or may not be considered income for the purposes of calculating spousal support. This court determines that consistent with the *Humphrey* and *Maher* decisions, the court's determination that appellee's inheritance from either his mother or father should not be considered for purposes of calculating spousal support as well.

In *Humphreys* this Pennsylvania Supreme Court noted that:

In light of the fact that we can find no principled way of fitting the corpus of an inheritance into the statutory definition of income, we hold that it may not be so included. However, this does not mean that an inheritance will not affect the amount of support to which a child may be entitled. The Support Guidelines

provide that in deciding whether to deviate from the presumptive amount of support determined by the Guidelines, the trier of fact shall consider, *inter alia*, the *assets of the parties* and other relevant and appropriate factors, including the best interests of the children. Pa.R.C.P.1910.16-5(b)(5),(9)(emphasis added). Rule 1910.16-5(a) requires the trier of fact to provide written reasons for, and findings of fact justifying the amount of the deviation.

*Humphreys*, 790 A.2d at 287-88 (footnote omitted) (italics in original).

This court notes that the *Humphreys* court did reiterate that while inheritance is not statutorily "income" and as such it cannot be included in the guidelines for child support, a court is permitted deviate from the guidelines such that the support would be affected. This court did consider appellee's distribution from his inheritance and trust when calculating appellee's earning capacity, for the time period when appellee was solely employed with Liberty Dental and was receiving unemployment as his position with Einstein had been terminated, from July 13, 3012 until September 30, 2013.

When issuing the final support order, this court did consider the inheritance received by appellee in calculating appellant's spousal support; however, this court determined that the inheritance should not be calculated a part of appellee's monthly income. This court notes that appellee's credible testimony was that he was able to receive a distribution from his inheritance and trust;

however, there was no testimony that this is appellee's consistent practice or that he receives a consistent amount. This court notes that appellee's testimony was that he received a distribution in a lump sum on or about December 31, 2013, there is no guarantee of the amount of distribution or the date of distribution.

Additionally, this court determined that even with appellant at a zero earning capacity and with appellee now making almost double what the court had previously ascribed as his earning capacity, there was no reason to depart from the guidelines and include the one time distribution of interest as a part of appellee's income. This court notes that the parties children are emancipated, appellee continues to pay the mortgage on the marital residence, over and above the spousal support award, for the residence in which appellant currently resides, appellee continues to pay the COBRA payments for appellant's medical benefits and appellant receives alimony from appellant. Based upon the spousal support award of nearly $6,400 a month, plus all the other "benefits" as listed above, this court determined that there was no reason to deviate from the guidelines and to consider appellee's inheritance as a part of his income in determining the spousal support award.

## CONCLUSION:

For the foregoing reasons, this appeal should be quashed and this courts order of equitable distribution should be affirmed.