J-A25033-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| LESLIE M. CERF, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| HENRY S. McNEIL, JR., | : | |
| | : | |
| Appellee | : | No. 348 EDA 2015 |

Appeal from the Order entered December 30, 2014,
Court of Common Pleas, Philadelphia County,
Family Court at No. 00-01231 – PACSES No. 765104114

BEFORE: PANELLA, DONOHUE and MUNDY, JJ.

DISSENTING MEMORANDUM BY DONOHUE, J.: **FILED DECEMBER 21, 2015**

I agree with the learned Majority that this appeal is properly before us for decision. I respectfully disagree, however, with the result it reaches. In my view, the trial court erred by denying, in part, Mother's exceptions to the support master's child support order.

I begin by setting forth the facts of this extremely complicated case, the greater part of which the Majority appears to overlook in its adoption of the trial court's recitation of the facts. Mother and Father are the parents of two minor children of whom they enjoy equally shared physical custody. On March 26, 2013, Mother filed a petition to modify the 2009 child support order, which the trial court had entered using the **_Melzer_**[1] analysis

---

[1] **_Melzer v. Witsberger_**, 480 A.2d 991 (Pa. 1984). In 2010, our Supreme Court adopted Rule of Civil Procedure 1910.16-3.1, which created a support guideline for high-income cases (when the parties' combined net monthly

previously used in high income cases. In Mother's request for modification, she averred that Father's income increased beginning in 2011 "by millions of dollars" and that she only learned about this increase in income in March of 2013. Petition for Modification, 3/26/13, ¶¶ 6-7.

A hearing was held before a support master on May 12, 2014, at which Mother and Father testified. Evidence was presented that in 2011, Father sold artwork for which he received approximately $7,500,000 in capital gains. Evidence was also presented that Father was the beneficiary of trusts from which he received distributions to fund his lifestyle. The trusts can be traced back to 1959, at which time Father's father, Henry Slack McNeil, Sr. ("Grandfather"), established five inter vivos trusts to benefit his family members. Of relevance to the case at bar,[2] one such trust was established to benefit Father, his future spouse and his lineal descendants ("the Henry Trust"), and another trust to benefit Grandfather's wife, Lois McNeil, as well as Grandfather's lineal descendants ("the Lois Trust"). The original trust documents indicated that the trusts were "Delaware trust[s] … to be

income is more than $30,000), ending the utilization of the *Melzer* analysis for determining high income support cases. Pa.R.C.P. 1910.16-3.1, Explanatory Comment – 2010.

[2] A full recitation of the facts surrounding the creation of the trusts and the disputes that arose can be found in the decisions of the Delaware Chancery Court of New Castle County, *Bishop v. McNeil*, 1999 WL 743489 (Del. Ch. Sept. 14, 1999) (unpublished memorandum), and *McNeil v. Bennett*, 792 A.2d 190 (Del. Ch. 2001), *aff'd in part, rev'd in part sub nom.* *McNeil v. McNeil*, 798 A.2d 503 (Del. 2002). *See* Mother's Exhibit P-18.

governed, administered and construed according to the laws of Delaware." Father's Exhibits D-3 (Deed of Trust for the Lois Trust, Article Seven), D-4 (Deed of Trust for the Henry Trust, Article Seven).

Disputes concerning the administration and distribution of the Henry Trust and the Lois Trust arose in or around 1995. Litigation in the Delaware chancery court ensued, ultimately resulting in the parties agreeing to the division of the trusts into multiple, separate trusts. While awaiting favorable tax rulings by the Internal Revenue Service, the Delaware chancery court entered an order by stipulation of the parties on February 6, 2003. Of relevance to the appeal before us, the order called for distributions to Father to be made according to the unitrust method, specifically providing for the percentage for the 2002 distribution (3½ percent) and calling for a "payout percentage" in 2003 that would provide Father with $7,500,000. Mother's Exhibit P-18 (Stipulated Order and Judgment, 2/6/03, ¶¶ 6-7). The order further permitted Father to "request special distributions or loans" from the trusts for home improvements or to facilitate the purchase of art. *Id.*, ¶ 8.

In 2004, upon the receipt of the anticipated tax rulings from the IRS, the chancery court formally created trusts solely for the benefit of Father, his wife, and his lineal descendants and their spouses, excluding Father's two adult children from his first marriage, from the now-subdivided Henry Trust and Lois Trust (hereinafter referred to as "Father's Resulting Trusts"). *See* Mother's Exhibit P-18 (Chancery Court Order, 3/3/04). Father receives

- 3 -

disbursements from Father's Resulting Trusts, which are his primary source of income.  N.T., 5/12/14, at 163; Mother's Exhibit P-17.

In 2011, 2012 and 2013, Father received $2,000,000 each year in distributions from Father's Resulting Trusts.  At the hearing before the support master on Mother's request for modification of her child support award, Mother argued that the entirety of the trust distributions was "income" available for child support.[3]  Father claimed that only the portion of the distributions that constituted interest earned on the corpus of the trust, which, according to his tax return, was approximately $500,000 per year,

---

[3]  The Domestic Relations Code defines "income" available for support as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; **income from an interest in an estate or trust**; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302 (emphasis added).

was income for child support purposes. Prior to the hearing, Mother had attempted, without success, to obtain information from both Father and the one of trustees of Father's Resulting Trusts, Brett W. Senior, Esquire,[4] regarding the breakdown of interest and principal for the trust disbursements Father received. Counsel for Father attempted to assist Mother in her efforts, but was likewise unable to obtain the requested information. Based upon the documents that Father's Resulting Trust did provide, Mother argued before the support master that the distributions from the trust were made pursuant to the unitrust method. She further argued that because the trust increased in value in 2011, 2012 and 2013, despite substantial disbursements made to Father, the disbursements made could not be of the principal of the trust. Father countered that the value of the trust decreased from its creation in 2004 (at which time it was worth $54,531,042) until 2013 (at which time it was worth $45,727,207), which proved that the distributions he received from 2011 through 2013 were from the principal of the trust.[5]

_____

[4] Attorney Senior also served as Father's financial advisor. Mother subpoenaed Attorney Senior, who obtained separate counsel and sought a protective order. Thereafter, Mother did not pursue the matter further.

[5] The record reflects that large withdrawals were made from Father's Resulting Trusts from 2005 through 2008 (totaling $27,984,350), and that the trusts depreciated significantly in 2008 (down $6,945,599). Mother's Exhibit P-17.

On August 26, 2014, the master filed a recommendation and proposed support order, finding that pursuant to Pa.R.C.P. 1910.16-3.1, Mother was entitled to an increase in child support from $9229.58 monthly to $10,014.06 monthly, retroactive to January 1, 2011. The master further recommended that Father pay $1000 per month in arrears, making his new total monthly child support obligation $11,014.06. In reaching this conclusion, the support master included $7,545,178 in capital gains Father received from the sale of artwork as income for Father, prorating it over the minority of the children. Further, relying on **Humphreys v. DeRoss**, 790 A.2d 281 (Pa. 2002),[6] the support master included only $500,000 of the trust disbursements as Father's income in calculating his support obligation.

---

[6] In **Humphreys**, our Supreme Court held that a lump sum received by a father constituting the proceeds of the sale of his deceased mother's house sold by the decedent's estate did not qualify as income available for child support, more specifically, that it did not meet the definition of "income from an interest in an estate or trust." **Humphreys**, 790 A.2d at 284-85.

> Considering that inheritance is one of the most common means by which wealth is transferred, it defies logic that the legislature would not have clearly provided for inheritance within the statutory definition of income if that were its intent. … In light of the fact that we can find no principled way of fitting the corpus of an inheritance into the statutory definition of "income", we hold that it may not be so included.

**Id.** at 285, 287. Our Supreme Court therefore found that only the income generated from a parent's interest in a trust or inheritance may be considered income, and not the principal or the corpus of the trust or inheritance.

On September 15, 2014, Mother filed exceptions to the master's recommendation and proposed support order, alleging:

1. The [m]aster erred by failing to include in Father's income the full amounts of his distributions from two trusts, which amounts were at least $2,500,000 in 2011, $2,000,000 in 2012, and $2,000,000 in 2013 … .

* * *

2. The [m]aster erred in finding that Father's only income from the trusts for child support purposes was $500,000 in "interest income" when Father's 2011 tax return showed that Father had $710,046 in interest income (most of which was tax exempt), dividend income and trustee fees and Father's 2012 tax return showed that Father had $657,889 in interest income (most of which was tax exempt), dividend income and trustee fees.

3. The [m]aster erred by including a reduction for equally shared custody for a period before Father was given equally shared physical custody by agreement in March 2013.

4. The [m]aster erred by omitting [e]xhibit P-18 from the list of Mother's exhibits.

5. The [m]aster erred by directing that arrears should be paid at a rate of $1,000 per month when the arrears should be paid in a lump sum or at least be paid at a much faster rate.

6. The Master erred by not directing that Father pay toward Mother's legal fees.

Exceptions to Proposed Order of Support, 9/15/14 (factual averments omitted).

The trial court held argument on Mother's exceptions on November 24, 2014. At that time, Mother and Father indicated that they could resolve exceptions two through five by stipulation.[7] The majority of the argument

---

[7] The agreed upon order authored by the trial court on December 4, 2014, and filed on January 5, 2015, states:

1. This [o]rder shall be without prejudice to the issue of whether [Father's] income for child support purposes should include the full amounts of his distributions from two trusts, which issue will be decided by this [c]ourt after reviewing the briefs submitted by each party.

2. Father's 2011 income shall include the $710,046 in interest income, dividend income and trustee fees reported on Father's 2011 federal tax return, and Father's 2012 income shall include Father's $657,889 in interest income, dividend income and trustee fees.

3. The support calculation for the period from January 1, 2011 through March 31, 2013 shall be made using a shared custody adjustment based on Father having 43% physical custody during that period. The support calculations for the period from April 1, 2013 forward shall be made using a shared custody adjustment based on Father having 50% physical custody during that period.

4. Exhibit P-18 shall be considered as having been admitted as one of Mother's Exhibits.

5. The arrears shall be paid at a rate of $2,000 per month, without prejudice to this [c]ourt's determination on the payment of any additional arrears that may result from this [c]ourt's decision referenced in paragraph one above.

6. This [o]rder shall be without prejudice to the issue of Mother's exception to the [m]aster's decision not to

presented addressed the first exception raised by Mother. On December 30, 2014, the trial court entered an order granting exceptions two through five, as agreed by the parties, and ordered "an administrative remand" for the master "to determine, for the record, that the final figures are consistent with the current support guidelines." Trial Court Order, 12/30/14, at 1. Regarding exception six, related to the payment of Mother's counsel fees, the trial court stated that it would reopen the record and hear evidence on this issue, if requested. *Id.* Finally, regarding Mother's first exception pertaining to the master's exclusion of the bulk of Father's trust distributions as income available for child support purposes, the trial court found that Mother failed to satisfy her burden of proving that the entirety of the trust distributions should have been treated as income. *Id.* at 1-2. Citing *Humphreys*, the trial court found that the master "correctly and proper[]ly based the recommended order solely on the law and the evidence before him[.]" *Id.* at 2. The trial court went on to say that "[t]he certain 'discovery' issues raised[] could very well have resulted in a different recommendation by the master. The obtaining of the evidence and the proper person to testify is clearly not the province of this court nor the

---

> award Mother counsel fees. That issue shall be decided by this [c]ourt.
>
> 7. The lien that has been placed on Father's bank account shall be lifted.

Agreed Order, 1/5/15.

[m]aster. Ample time was afforded counsel, but evidence was not produced." ***Id.***

I now turn to address the issues Mother raises on appeal. She presents three questions for review:

1. Did the trial court err as a matter of law and abuse its discretion by excluding form the calculation of income available for child support the majority of [Father]'s net income from a [t]otal [r]eturn [u]nitrust?

2. Did the trial court err as a matter of law and abuse its discretion by placing a burden of proof on [Mother] to rebut [Father]'s bald assertion that some of his unitrust income constituted principal of the trust rather than income of the trust?

3. Did the trial court err as a matter of law and abuse its discretion by not finding that Father failed to meet his burden of proving that some portion of the unitrust distributions to him should not be considered income for child support purposes?

Mother's Brief at 6.

This Court reviews a child support order according to the following standard:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality,

> prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Kimock v. Jones*, 47 A.3d 850, 853-54 (Pa. Super. 2012) (citation omitted).

Mother asserts that the trial court erred by finding only that a small percentage of the trust distributions Father received from 2011 through 2013 constituted "income" for child support purposes. Mother's Brief at 14, 24-30. She contends that the trial court failed to consider that the trusts in question are unitrusts, not traditional income trusts, and that under the Delaware Uniform Principal and Income Act,[8] all of the distributions received by Father during the pertinent timeframe should have been considered income. *Id.* at 26-30. Mother further states that because the trust gained value from 2011 through 2013, the disbursements made to Father in those years could not have been from the corpus of the trust, rendering *Humphreys* and its progeny inapposite.[9] *Id.* at 30-33.

---

[8]  12 Del. C. §§ 61-101–61-107. I note that Pennsylvania also has adopted the Uniform Principal and Income Act. *See* 20 Pa.C.S.A. §§ 8101-8107.

[9]  The Superior Court in *Jacobs v. Jacobs*, 884 A.2d 301 (Pa. Super. 2005), subsequently applied the holding of *Humphreys* to monetary gifts received by a parent. The *Jacobs* Court held that like an inheritance, "[a] gift is not given in exchange for services, so it does not fit into the statutory definition of income. Accordingly, the corpus of a gift cannot be considered in the calculation of income for support purposes." *Id.* at 307; *see also Suzanne D. v. Stephen W.*, 65 A.3d 965, 972 (Pa. Super. 2013).

In the trial court's 1925(a) opinion, adopted by the Majority to resolve this appeal, the trial court states that based upon the evidence presented, the support master did not err in failing to include the entirety of the trust disbursements as Father's income. Trial Court Opinion, 3/24/15, at 7-8. The trial court noted that the trust overall decreased in value from 2004 until 2013, and concluded that the fact that the trust increased in value between 2011 and 2013, despite large disbursements made to Father, did not alone establish that the disbursements made to Father between 2011 and 2013 were not principal. *Id.* at 7.

In his responsive brief, Father assails Mother's citation on appeal to Delaware trust law as controlling authority in this case and asserts that she waived any reliance upon the Delaware Uniform Principal and Income Act by failing to raise this argument below. Father's Brief at 28. I disagree that Mother waived her claim that Father's Resulting Trusts are unitrusts governed by Delaware law. The record reflects that Mother consistently and repeatedly argued before both the support master and the trial court that Father's Resulting Trusts are unitrusts and that the entirety of the distributions received by him from 2011 through 2013 should therefore be treated as income available for child support. *See, e.g.,* N.T., 5/12/14, at 196; N.T., 11/24/14, at 10-12, 14, 27; Mother's Post-Trial Brief, 12/30/14, at 15-16. Furthermore, the exhibits entered into evidence before the support master lead to the unquestionable conclusion that Delaware law

applies for the construction, governance and administration of Father's Resulting Trusts.[10]  *See* Mother's Exhibit P-18 (Stipulated Order and Judgment, 2/6/03, ¶ 3); Father's Exhibits D-3 (Supplemental Deed of Trust for the Lois Trust, ¶ C), D-4 (Supplemental Deed of Trust for the Henry Trust, ¶ C).

Father further denies that Father's Resulting Trusts are unitrusts. Father's Brief at 25 n.9, 26-29.  In raising this claim for the first time on appeal, Father ignores the statements made by his counsel before the trial court at the hearing on Mother's exceptions.  At that time, Father's counsel conceded that Father's Resulting Trusts are unitrusts.  *See, e.g.,* N.T., 11/24/14, at 33 (Father's counsel stating, "[T]he [c]hancery [c]ourt … ruled on the investment vehicle for the trust, and approved it as a unitrust"), 36-37 ("when they went to the unitrust, and the market became much more volatile, they decided to give him a fixed amount").  Indeed, Father's counsel informed the trial court that it was "bound by the fact that the trust converted to a unitrust by judicial authorization."  *Id.* at 69.  Statements made by counsel during legal proceedings are binding upon his or her client. *See Commonwealth v. Johnson*, 961 A.2d 877, 882 (Pa. Super. 2008);

---

[10]  Although not included in the certified record on appeal, I observe that the reproduced record contains Father's answer to Mother's motion to compel answers to her request for the production of documents.  *See* Reproduced Record at 49a-58a.  Therein, Father acknowledged that the trusts in question "are Delaware [t]rusts subject to the jurisdiction of the Delaware [c]hancery [c]ourt[.]"  *Id.* at 53a (¶ 9).

*Sule v. W.C.A.B. (Kraft, Inc.)*, 550 A.2d 847, 849 (Pa. Super. 1988). Father therefore cannot be heard on appeal contending to the contrary. *See id.*

In the prior litigation concerning the Lois Trust, the Delaware Supreme Court explained the unitrust method for making trust distributions as follows:

> The unitrust approach is designed to preserve principal by establishing a fixed and ascertainable pay out while at the same time broadening the source of distribution in periods, as at present, when income, particularly dividends, are of minor significance in measuring the growth of an equities-based trust … . [T]he unitrust approach is merely a policy for distribution. The trustees continue to have the authority to invade principal to accommodate any unusual needs. … [T]he unitrust policy may also serve to redress the uncertainty and potential for friction between beneficiaries which engenders litigation.

*McNeil*, 798 A.2d at 512. Delaware law refers to trusts distributed pursuant to the unitrust method as "total return unitrusts." *See* 12 Del. C. §§ 61-106, 61-107. It defines a total return unitrust as an income trust that was converted such that the "unitrust amount is treated as the net income of the trust." 12 Del. C. § 61-106(a)(5). The "unitrust amount" is "an amount computed as a percentage of the fair market value of the trust." 12 Del. C. § 61-106(a)(8).

> The percentage to be used in determining the unitrust amount shall be a reasonable current return from the trust, in any event not less than 3 percent nor more than 5 percent, taking into account the

> intentions of the trustor of the trust as expressed in the governing instrument, the needs of the beneficiaries, general economic conditions, projected current earnings and appreciation for the trust, and projected inflation and its impact on the trust.

12 Del. C. § 61-106(f).

A trust may be designated a "total return unitrust" expressly in its governing document, *see* 12 Del. C. § 61-107, or by the approval of a majority of the trustees or the chancery court. *See* 12 Del. C. § 61-106. Unless prohibited by the trust instrument, a majority of the trustees or the chancery court may also approve the conversion of a total return unitrust back into a traditional income trust. 12 Del. C. §§ 61-106(b)(2), (c)(2), (d), 61-107(e).

Unless the terms of the trust instrument dictate otherwise, distributions made from a total return unitrust are deemed to have come from the following sources, in order of priority:

> (1) From net accounting income determined as if the trust were not a unitrust;
>
> (2) From ordinary income not allocable to net accounting income;
>
> (3) After calculating the trust's capital gain net income as described in Internal Revenue Code ("I.R.C.") § 1222(9) [26 U.S.C. § 1222(9)], from net realized short-term capital gain as described in I.R.C. § 1222(5) [26 U.S.C. § 1222(5)] and then from net realized long-term capital gain described in I.R.C. § 1222(7) [26 U.S.C. § 1222(7)]; and
>
> (4) From the principal of the trust.

12 Del. C. § 61-107(h); **see also** 12 Del. C. § 61-106(h). The "net income" of the trust is "the total receipts allocated to income during an accounting period minus the disbursements made from income during the period, plus or minus transfers under this chapter to or from income during the period." 12 Del. C. § 61-102(8). "Income" is "money or property that a fiduciary receives as current return from a principal asset." 12 Del. C. § 61-102(4). "Principal" is "property held in trust for distribution to a remainder beneficiary when the trust terminates." 12 Del. C. § 61-102(10).

In the case at bar, Mother presented evidence that prior to their subdivision, both the Henry Trust and the Lois Trust were converted from traditional income trusts to total return unitrusts. **See** Mother's Exhibit P-18 (**Bishop v. McNeil**, 1999 WL 743489, * 17 (Del. Ch. Sept. 14, 1999) (unpublished memorandum)); **McNeil v. McNeil**, 798 A.2d 503, 512 (Del. 2002). Upon subdividing the two trusts (for the creation of Father's Resulting Trusts) the Delaware chancery court continued to call for distributions to be made to Father using the unitrust method. **See** Mother's Exhibit P-18 (Stipulated Order and Judgment, 2/6/03, ¶¶ 6-7). As admitted by Father, he continues to receive distributions pursuant to the unitrust method. N.T., 11/24/14, at 36-37.

"[I]t is well established that both parents are equally responsible for the support of their children." **Samii v. Samii**, 847 A.2d 691, 696 (Pa.

Super. 2004) (citation omitted). Thus, "[t]he starting point for calculation of a parent's child support obligation is a determination of each party's income available for support." **Mencer v. Ruch**, 928 A.2d 294, 297-98 (Pa. Super. 2007). In a support modification case, the petitioner bears the burden of proving that a "material and substantial change in circumstances" occurred warranting modification of the support obligation. **Kimock**, 47 A.3d at 855; Pa.R.C.P. 1910.19.

Mother, as petitioner in the case at bar, met her burden of proof that Father experienced a substantial change in circumstances based upon the approximately $7,500,000 capital gains he received in 2011. Because this was the first post-**Melzer** modification of the parties' support order, the support master also had to, for the first time, determine the parties' income under the guidelines, which differs from the definition of income available for support under **Melzer**. **Compare Melzer**, 480 A.2d at 996 (stating that income available for support is "the amount of each parent's income which remains after the deduction of the parent's reasonable living expenses") **with** Pa.R.C.P. 1910.16-2 (stating "the amount of support to be awarded is based upon the parties' monthly net income," as defined in that section, which does not deduct the parents' living expenses).

Case law is silent regarding who bears the burden of proving the amount of income available for child support under the guidelines in a post-**Melzer** support modification case. Based upon the unique facts of this case,

however, I need not answer this question. Father's sole source of income (outside of the capital gains income he received in 2011 and trustee fees[11]) is from Father's Resulting Trusts. As the trusts in question are Delaware unitrusts, section 61-106(h) presumes that distributions from total return unitrusts are made from the trusts' net income. 12 Del. C. § 61-106(h). Thus, the burden in the case at bar was on Father to rebut that presumption with proof that the trust distributions came from the principal of the trusts, as he alleged.

The record reflects that in 2011, 2012 and 2013, Father received $2,000,000 in unitrust distributions from Father's Resulting Trusts. N.T., 5/12/14, at 83, 94.[12] As stated above, Pennsylvania law only excludes from the definition income available for child support the corpus or principal of a trust. **See Humphreys**, 790 A.2d at 284-85, 287; **Jacobs**, 884 A.2d at 307; 23 Pa.C.S.A. § 4302. The only evidence Father presented regarding the source of the trust disbursements was his 2011 and 2012 tax returns, which indicated that $660,046 of the disbursements he received in 2011 and $607,871 in 2012 constituted interest and dividend income. **See** Father's

---

[11] The record reflects that Father served as a trustee of Father's Resulting Trusts until 2013, for which he received $50,000 per year in compensation. **See** N.T., 5/12/14, at 82-83, 106-07; **see also** Father's Exhibits D-1, D-2..

[12] Although Mother contends that Father received $2,500,000 from Father's Resulting Trusts in 2011, she did not present any evidence in support of this claim. The support master found credible Father's testimony that he received $2,000,000 each year in trust distributions. **See** Master's Report, 8/26/14, at 9.

Exhibits D-1, D-2. Father presented no evidence to support a finding that any part of the distributions he received from Father's Resulting Trusts from 2011 through 2013 were of principal of the trusts. In the absence of evidence supporting a finding that the distributions Father received from Father's Resulting Trusts from 2011 through 2013 were of trust principal, **Humphreys** and its progeny do not operate to exclude the trust distributions received by Father from "income" available for child support.

Based upon the record before this Court, I would conclude that the trial court erred as a matter of law in finding that the entirety of the trust distributions received by Father from 2011 through 2013 was not includable as income available for child support. I therefore respectfully dissent from the Majority's decision.