OPINION BY STABILE, J.:
Appellant, James Bielak, Jr. ("Husband"), appeals from the January 25, 2018 order denying his petition to modify his obligation to pay spousal support and alimony pendente lite ("APL") to Appellee, Elizabeth Bielak ("Wife"). We affirm.
The parties married on September 19, 1998 and separated on December 27, 2015. Wife filed for divorce on February 8, 2016 and filed a complaint for spousal support and APL one day later. Husband filed a competing action for child support, as he has primary custody of the parties' four minor children. On April 25, 2016, the trial court ordered Husband to pay $ 555.73 in APL to Wife. The trial court arrived at that amount after crediting Husband with an offset of $ 1,159.60, the amount Wife would have owed in child support.
In an inventory statement filed on April 20, 2017, Wife listed an IRA ("the IRA") she inherited from her father after his passing in 2006 as non-marital property worth $ 94,833 as of the parties' separation. Wife revealed, in a July 7, 2017 pretrial statement, that she liquidated nearly all of the IRA to pay for living expenses and legal fees during the pendency of the parties' divorce proceedings.[1]
The parties reached agreement at a master's hearing on July 13, 2017. On July 17, 2017, Husband filed a petition seeking termination of his APL obligation and support from Wife. On August 10, 2017, the parties executed a marital settlement agreement memorializing the terms they reached at the July 13, 2017 hearing.[2] The settlement agreement terminated Husband's APL obligation effective July 13, 2017, and permitted the parties' attorneys to resolve any outstanding overpayments or arrears. Settlement Agreement, 8/10/17, at Article XII. Husband's claim for child support was to remain open pending a conference.[3] Id. At a August 24, 2017 conference, *1119 the parties disputed whether Wife's distributions from the IRA were accounted for in equitable distribution, or whether they were income for purposes of support.
On September 1, 2017, interim orders terminated Husband's APL obligation and directed Wife to pay child support. After a January 18, 2018 de novo hearing, which Husband demanded in order to address the ramifications of Wife's liquidation of the IRA funds, the trial court affirmed the interim orders. In particular, the trial court declined Husband's request to reopen the APL case for retroactive modification of the APL award. The court also concluded that the disbursements from the IRA did not create income for purposes of support. Whether the trial court erred in its treatment of the IRA disbursements is the sole issue before us in this timely appeal. Husband's Brief at 4. Specifically, Husband argues retroactive modification of Wife's APL[4] award was appropriate because she did not need APL given her liquidation of the IRA. He argues that the IRA distributions constitute income in respect of a decedent under the Domestic Relations Code.
Section 4302 of the Domestic Relations Code defines income as follows:
"Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent ; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.
23 Pa.C.S.A. § 4302 (emphasis added).
The trial court relied on Humphreys v. DeRoss , 567 Pa. 614, 790 A.2d 281, 283 (2002), in which our Supreme Court held that an inheritance is not income as defined in § 4302. There, DeRoss received $ 83,696.50 after his mother's estate sold real estate. At issue in Humphreys was the petition for modification of support filed by DeRoss' adult daughter, Humphreys, on behalf of her younger sister, a minor. In the petition, Humphreys alleged *1120 changed circumstances based on the inheritance. Id. The Supreme Court noted that the legislature included "income from an interest in an estate or trust" in § 4302, but did not include the principal of an inheritance or trust. Id. at 284-85. "Considering that inheritance is one of the most common means by which wealth is transferred, it defies logic that the legislature would not have clearly provided for inheritance within the statutory definition of income if that were its intent." Id. at 285. Moreover, "including an inheritance in income available for support does not reflect how families in which parents live together treat inheritances. In an intact family, the receipt of a lump sum is likely to be used for purchases, investments or savings, and not for meeting living expenses." Id. at 286. Thus, in light of the legislature's failure to include in the definition an inheritance or the corpus of a trust, the Supreme Court concluded that the inheritance was not income under § 4302. In Maher v. Maher , 575 Pa. 181, 835 A.2d 1281 (2003), the Supreme Court applied Humphreys without specificity as to the source of the inherited funds (real estate sale proceeds, retirement account, etc.).
Instantly, Husband argues that Wife's IRA distributions constitute "income in respect of a decedent" under § 4302. We disagree because the Humphreys Court expressly rejected that argument: "the inheritance [the appellant] received from his mother's estate does not meet the definition of 'income in respect of a decedent' or 'income from an interest in an estate or trust.' " Humphreys , 790 A.2d at 284-85. Husband attempts to distinguish Humphreys because that case involved proceeds from an estate's real estate sale, whereas the instant case involves IRA distributions from an inherited account. According to Husband, Humphreys is distinguishable because the appellant in Humphreys received a distribution directly from an estate, whereas Wife took no distributions until approximately ten years after she inherited the IRA from her father. Husband's Brief at 22. We find this distinction unavailing, given the Humphreys Court's statement that it could "find no principled way of fitting the corpus of an inheritance into the statutory definition of income[.]" Humphreys , 790 A.2d at 287. Furthermore, the Maher Court applied Humphreys without reference to the source of the inherited funds. Plainly, the funds Wife received from her father constituted the corpus of an inheritance when she received it in 2006. Husband fails to explain why that should cease to be the case after the passage of time.[5] In summary, we find Humphreys *1121 on point and controlling. The funds Wife inherited from her father in 2006 are not income under § 4302.
Moreover, the parties consistently treated the IRA (excepting the marital increase in value) as an inherited non-marital asset belonging to Wife. Husband cites no law prohibiting an APL recipient from liquidating a personal asset during a divorce proceeding. To the extent Husband believed Wife's possession of a liquid asset reduced or eliminated her need for APL, he could have made that argument in early 2016, as soon as Wife petitioned for APL. Husband does not argue that Wife hid the IRA from him. Rather, Wife's liquidation of the IRA triggered the present dispute. We observe that in Humphreys , the appellant immediately spent the inherited funds on a new home for his family. Humphreys , 790 A.2d at 283. Clearly, therefore, inherited wealth does not become income when the recipient chooses to spend rather than save it.
Finally, we note the trial court's finding that the non-marital portion of the IRA was accounted for in determining Wife's share of the equitable distribution of the parties' marital property. The court therefore found that treating the IRA as income to Wife would be inequitable inasmuch as it would permit Husband to "double-dip" by relying on the IRA to reduce Wife's share of the distribution and reduce her APL award. Husband argues there is no evidence to support that finding because the parties reached an agreement and thus the record contains no trial court findings explaining the equitable distribution scheme. Once again, we observe that Husband and his counsel were well aware of the existence and value of the IRA. Our decision, however, need not rest on the trial court's finding. Instead, we find Humphreys controlling, and we conclude that Wife's liquidation of the IRA did not create income to her under § 4302.
Order affirmed.

The parties treated the increase in value of the IRA as a marital asset. The amount presently at issue is approximately $ 73,000.00 in distributions from the non-marital portion of the IRA (i.e. , the amount Wife inherited in 2006).

The divorce decree was entered on August 28, 2017.

The parties dispute whether the terms of their marital settlement agreement foreclosed Husband's ability to raise the issue he presents on appeal. Given our analysis in the main text, we do not address whether the terms of the marital settlement agreement were sufficiently clear on this point.

We review an APL award for abuse of discretion. Carney v. Carney , 167 A.3d 127, 134 (Pa. Super. 2017).
APL is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse. Also, and perhaps more importantly, APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. [...] APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.
Id. at 134-35 (internal citations and quotation marks omitted). We observe that Husband appealed from the APL order, not the support order.

Additionally, as the trial court noted, our Supreme Court has explained the history of the phrase "income in respect of a decedent," albeit in a different context. In Estate of Rose , 465 Pa. 53, 348 A.2d 113 (1975) (plurality), the issue was the valuation of an estate for purposes of the Commonwealth's inheritance tax. Particularly at issue was the decedent's undistributed share of partnership profits from his law firm. Id. at 115. The Commonwealth appraised the profits without subtracting the federal and state income taxes the estate eventually paid on the partnership profits. Id. Our Supreme Court labeled the partnership profits "income in respect of a decedent" because they were income "which had accrued to the decedent, but on which no income tax had been paid by the decedent because the decedent was a cash basis taxpayer." Id. The same label applied to the decedent's rights to receive proceeds from the sale of common stock of a manufacturing company. Id. In essence, income in respect of a decedent is post-death income subject to income tax liability. Id. at 121 (Jackson, J. concurring). "On such items of income, the estate or beneficiary is liable to pay federal income tax." Id. at 116. Husband does not address Estate of Rose , nor does he argue that the Estate of Rose Court's definition of income in respect of a decedent applies to an inherited tax-deferred retirement account.