J-S01015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NANCILYN A. FOLKERTS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAUN H. FOLKERTS | : | |
| | : | |
| Appellant | : | No. 919 MDA 2024 |

Appeal from the Order Entered June 6, 2024
In the Court of Common Pleas of York County Domestic Relations at
No(s): 00588 SA 2022, PACSES NO: 166301487

BEFORE: NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: JUNE 16, 2025**

Appellant Shaun H. Folkerts (Father) appeals from the final order entered on June 6, 2024, that calculated his child support obligation and directed Father to pay child support for the three children he shares with Appellee Nancilyn A. Folkerts (Mother), K.A.F., M.J.F., and N.C.F.[1] On appeal, Father contends that the trial court abused its discretion when it calculated his monthly net income. After careful review, we vacate the trial court's order and remand for further proceedings consistent with this memorandum.

The relevant facts and procedural history of this matter are well known to the parties. Briefly, the parties were married on November 11, 2006, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In a child support action, the final order is the order directing payment of support or dismissing the support complaint. ***See D.L.H. v. R.W.L.***, 777 A.2d 1158, 1158 (Pa. Super. 2001).

separated on March 7, 2022. As noted, the parties are the parents of three minor children. Mother filed a petition seeking child support in May of 2022, and filed an amended petition in June of 2023. On July 31, 2023, the trial court entered an order setting Father's child support obligation at $1,979.25 per month, with $2,904.26 in arrears. Father filed a petition for modification on December 1, 2023. On January 24, 2024, the trial court entered an order setting Father's child support obligation at $1,509.18 per month.

On February 14, 2024, Mother filed a petition for a hearing *de novo*, and Father filed a petition for modification of support on February 28, 2024. A hearing was held on May 14, 2024, and on that same day, the trial court directed the York County Domestic Relations Office to calculate Father's support obligation retroactive to December 1, 2023, to reflect changes to his income. In an order entered on May 20, 2024, Father's monthly support payment was recalculated at $2,109.14 per month, plus $210 per month for arrears. On June 6, 2024, the trial court entered a final order that modified the May 20, 2024 order and calculated Father's support payments to be $2,378.68 per month, plus $237 per month for arrears. On June 13, 2024, Father filed a motion for reconsideration of the June 6, 2024 order. The trial court did not grant reconsideration prior to the expiration of the appeal period, and Father filed a timely notice of appeal.[2] Both the trial court and Father complied with Pa.R.A.P. 1925.

_____

[2] The trial court ultimately denied Father's motion for reconsideration. **See** Order, 6/20/24.

Father raises the following issues, which we have renumbered as follows:

1. Did the trial court commit an error of law and abuse of discretion by assigning Father an additional income of $48,000.00 per year in "unearned income" from a theoretical forced sale of his marital property, thus generating a theoretical six percent "interest earned" from his physical property that he received in equitable distribution, resulting in double-dipping in violation of *Rohrer v. Rohrer*, 715 A.[2d] 463 (Pa. Super. 1998)?

2. Did the trial court commit an error of law and an abuse of discretion by directing that if Father receives funds of any kind from the properties that he inherited a 10% beneficiary interest in after his father's death, that this "income" by way of the corpus of his inheritance is attributed to Father in violation of *Humphreys v. DeRoss*, 790 A.2d 281 (Pa. 2002)?

3. Did the trial court abuse its discretion by assigning Father income derived from an employer that he had not worked for in more than three (3) months at the time of entry of the order when Father was receiving no income and for assigning Father bonus income when Father was not working for the employer and when the bonus was not guaranteed when he was working for the employer?

Father's Brief at 2 (formatting altered). Mother did not file a brief in this appeal.

Father's issues challenge the trial court's calculation of his income and child support obligation. In reviewing such claims, our standard of review is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a

conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Summers v. Summers*, 35 A.3d 786, 788 (Pa. Super. 2012) (citation omitted). Additionally,

> this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

> When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the [trial] court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citations omitted and formatting altered).

"Generally, the basic child support . . . obligation is based on the parties' monthly net incomes." Pa.R.C.P. 1910.16-2. "Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term 'income' and includes income from any source." Pa.R.C.P. 1910.16-2(a). Further, Section 4302 defines income as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and

- 4 -

endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302.

## **Unearned Income**

In his first issue, Father contends that the trial court improperly "concluded that Father could and should be required to sell his marital assets for the sole purpose of generating income available for support." Father's Brief at 19. At issue is Father's collection of approximately 265 cars, as well as car parts and signage, which had a stipulated value in equitable distribution of $800,000. N.T., 4/30/24, at 14-15, 90. As part of its May 14, 2024 order, the trial court determined that Father had $48,000 in unearned income, and it concluded as follows:

> That $48,000 per year of unearned income has been calculated by the [trial] court by taking the $800,000 of assets that [Father] was awarded in the property distribution matter and multiplying that times six percent, assuming he could get six percent interest if he sold all of these things and turned it into liquid[] assets that could be turned into income.

> Said differently, [Father] has a lot of assets but a large asset in the hobby business whatever you want to call it, of car parts and cars that is clearly worth at least $800,000. At six percent interest, that's $48,000 per year.

> The Domestic Relations Section will calculate that $48,000 a year as unearned income so that there is no FICA and similar taxes taken from it.

Trial Ct. Order, 5/14/24, at 2.

Father argues that he does not have a buyer for the assets in question and that he "should not be forced to sell this collection to generate new income for purposes of support." Father's Brief at 27. Father further argues that a hypothetical sale of his collection, and any interest derived from the proceeds of such a sale is "arbitrary and speculative." **Id.** Father alleges that the trial court's assignment of $48,000 in unearned income is not representative of Father's "actual circumstance[s]." **Id.** Accordingly, Father contends that the trial court's conclusion that $48,000 in unearned income should be considered for support purposes is an abuse of discretion. **Id.**

> It is well-established that

> a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his [or her] earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his [or her] age, health, mental and physical condition, training, and earnings history.

**Mencer v. Ruch**, 928 A.2d 294, 299 (Pa. Super. 2007) (citation omitted).

> This Court has held as follows:

> It is settled law that "money included in an individual's income for the purpose of calculating support payments may not also be labeled as a marital asset subject to equitable distribution." **Rohrer v. Rohrer**, 715 A.2d 463, 465 (Pa. Super. 1998). . . .

[T]he reverse is also true. Money received from the sale of an asset awarded in equitable distribution may not be included in an individual's income for [the] purposes of calculating support payments. The single caveat to this rule is that any gain realized in the sale of the asset may, indeed must, be included in the calculation of income.

**Miller v. Miller**, 783 A.2d 832, 835 (Pa. Super. 2001) (footnote omitted).

This Court has observed that, "[w]hile support orders may not be punitive or confiscatory, sacrifices in aid of achieving the support goal may be demanded." **Coffey v. Coffey**, 575 A.2d 587, 590 (Pa. Super. 1990) (citation omitted); **see also Fennell v. Fennell**, 753 A.2d 866, 868 (Pa. Super. 2000).

In its Rule 1925(a) opinion, the trial court summarized its conclusion as follows:

The [trial] court did not err in finding that [Father] could liquidate [his collection] and earn six percent interest. The assets [Father] received in equitable distribution in the form of cars, parts, and signage were valued by stipulation of what a voluntary buyer will pay for the assets, and [Father] stipulated that they were worth $800,000. The [trial] court did not engage in double-dipping because the [trial] court did not consider the $800,000 of assets as income. The [trial] court considered only the income the assets could produce. Double-dipping would be if the [trial] court designated the $800,000 as income. The [trial] court did not consider this asset but rather the earnings that could be earned on the asset. The [trial] court believes that [Father] has not sold the assets yet because he does not want to. The [trial] court denies error in this matter.

Trial Ct. Op., 8/12/24, at 6.

After a careful review of the record, we are constrained to conclude that the trial court abused its discretion when it assigned $48,000 in unearned income to Father based on the stipulated value of Father's cars, car parts, and

signage collecting an interest rate of six percent. *See Summers*, 35 A.3d at 788. While we agree with the trial court that it did not engage in double-dipping in its analysis pursuant to *Rohrer* and *Miller*, we find that the trial court's conclusion that Father could collect six percent interest, should he liquidate his car parts and cars, is speculative and not based on evidence contained within the record. Indeed, any discussion of interest was limited to the interest rate on a savings account held by Father at M&T Bank. *See* N.T., 5/14/24, at 43. Accordingly, we are constrained to vacate the trial court's order finding unearned income in the amount of $48,000.00 based on the possible interest Father could earn should he sell the cars, car parts, and signage for $800,000.00, and we remand for further proceedings to determine what income or gains, if any, Father has realized from sales of the cars, car parts, and signage, which may be included and used to calculate Father's support obligation. *See Miller*, 783 A.2d at 835.

## Inheritance

In his second issue, Father contends that the trial court abused its discretion when it concluded that "any income" received from the property that he inherited from his father, including funds received from the sale of such property, should be considered income for purposes of calculating his child support obligation. Father's Brief at 28-38. Father concedes that the rental income proceeds generated from renting the real estate in the corpus of the inheritance would be income for support calculations. *See id.* at 28. However, Father argues that the **sale** of the inherited properties constitute

the sale of the corpus of the inheritance from his father and that sales of the corpus of the inheritance are not to be considered as income for purposes of determining his child support obligation. *See id.* at 30.

Our Supreme Court has held that an inheritance is excluded from income when calculating an individual's support obligations. *See Humphreys*, 790 A.2d at 287-88. The *Humphreys* Court stated: "we can find no principled way of fitting the corpus of an inheritance into the statutory definition of 'income', [and] we hold that it may not be so included." *Id.* 287. In reaching that determination, the *Humphreys* Court concluded that an inheritance is not a type of compensation for services and is therefore excluded from the definition of "income." *Id.* at 283-88; *see also Bielak v. Bielak*, 210 A.3d 1117, 1120-21 (Pa. Super. 2019) (noting that the source of the inherited funds is immaterial and holding that IRA distributions from an inherited account constitute the corpus of an inheritance). However, the *Humphreys* Court also explained:

> this does not mean that an inheritance will not affect the amount of support to which a child may be entitled. The Support Guidelines provide that in deciding whether to deviate from the presumptive amount of support determined by the Guidelines, the trier of fact shall consider, *inter alia*, the **assets of the parties** and other relevant and appropriate factors, including the best interests of the children. Pa.R.C.P. 1910.16–5(b)(5), (9) (emphasis added). Rule 1910.16–5(a) requires the trier of fact to provide written reasons for, and findings of fact justifying the amount of the deviation. Therefore, where the fact finder determines that an inheritance affects a payor's financial obligations by making more income available for support, an upward deviation is appropriate.

*Humphreys*, 790 A.2d at 287-88 (footnote omitted); *see also Maher v. Maher*, 835 A.2d 1281, 1286-87 (Pa. 2003) (explaining that although an inheritance cannot be considered when determining income, an inheritance may be considered as an asset when the trial court is determining whether to deviate from the support guidelines); Pa.R.C.P. 1910.16-5(b).

Here, the record reflects that Father inherited property from his father in the state of Florida, and Father, along with his siblings, transferred ownership of the inherited properties to an LLC. *See* N.T., 5/14/24, at 21-22; N.T., 4/30/24, at 54-58. Father owns 10% of the LLC, and he receives 10% of the rental income from the inherited properties, and in the event that an inherited property is sold, Father would receive 10% of the proceeds from the sale. *See* N.T., 5/14/24, at 22-23; N.T., 4/30/24, at 57-58. As noted, Father concedes that the proceeds from rent are included as income for purposes of calculating child support. *See* Father's Brief at 28-30. However, he argues that proceeds from any sale of the inherited properties are proceeds from the corpus of the inheritance and, therefore, they may not be included as income for purposes of calculating child support under *Humphreys*. *See id.*

The trial court's May 14, 2024 order directed that "the case may be reopened for adding **any income** from the [LLC] that may be discovered as after-discovered income once [Father] filed his 2023 Federal tax return." Trial Ct. Order, 5/14/24, at 3 (emphasis added). In its opinion, the trial court addressed Father's claim of error only briefly and stated: "[T]he [trial] court

- 10 -

considered not the inheritance but the income generated from inherited property. **Humphreys** . . . supports the [trial] court's determination. Therefore, the [trial] court denies error in this assessment." Trial Ct. Op. at 6.

While the trial court is correct with respect to proceeds from rental income derived from the inherited property, to the extent that the order includes as income proceeds from the **sales** of the properties that make up the corpus of the inheritance, such proceeds cannot be considered income for purposes of calculating Father's support obligation.[3] **See Humphreys**, 790 A.2d at 287-88. Therefore, we are constrained to vacate the trial court's order finding that "any income" from the LLC may be considered income for purposes of calculating child support to the extent that it includes the income that was, or would be, generated from the sale of the corpus of Father's inheritance from his father. We remand for the trial court to make findings of fact and conclusions of law with respect to what proceeds Father received from the LLC that were from the sale of the corpus of the inheritance that cannot be considered income, what proceeds such as rental income were from the LLC that could be considered income for purposes of calculating support pursuant to **Humphreys**, and whether Father's inheritance may be considered

_____

[3] However, as noted, the inheritance could be considered an asset for purposes of determining if a deviation from the guidelines is warranted, and written reasons for and findings of fact justifying a deviation would be required. **See Humphreys,** 790 A.2d at 288; **see also Maher**, 835 A.2d at 1286-87.

an asset such that a deviation from the support guidelines is appropriate. ***See Humphreys,*** 790 A.2d at 287-88; ***see also Maher***, 835 A.2d at 1286-87; Pa.R.C.P. 1910.16-5(b).

## **Prior Employment**

In his third issue, Father contends that the trial court "failed to consider Father's actual earnings when [it] assessed his annual income at more than $115,000.00[.]" ***Id.*** at 13. Specifically, Father argues that the trial court "ignored the circumstances of his separation from his prior employment with [his former employer] Keramida," and also exhibited bias when it learned of Father's pending criminal charges and, as a result, entered a support order that was "not attendant to . . . Father's individual circumstances." ***Id.*** at 16.

Rule 1910.16-2 prohibits a trier-of-fact from downwardly adjusting a party's net income if the trier-of-fact finds that a party's employment is terminated due to, *inter alia*, willful misconduct. Pa.R.C.P. 1910.16-2(d)(1)(ii). However, Rule 1910.16-2 requires a trier-of-fact to adjust a party's monthly net income due to a party's involuntary decrease in income, including, but not limited to, termination of employment. Pa.R.C.P. 1910.16-2(d)(2)(i).

Here, the trial court reached the following conclusion:

> It is denied that the [trial] court erred in its assignment of income derived from [Father's] prior employment. At the time of the May 14, 2024 hearing, the [trial] court believed [Father] was terminated from his position for willful misconduct. [***See*** Pa.R.C.P. 1910.16-2(d)(1)(ii).] . . .

- 12 -

> It is only now upon receipt of [Father's] notice of approval for unemployment compensation that the [trial] court has evidence that [Father] was not terminated for willful misconduct. The approval notice, which [Father] attached to his motion for reconsideration states as follows:
>
>> We have completed a review and investigation of your claim for unemployment benefits referenced above. We have determined that you were discharged because of unsatisfactory work performance. . . . There was no information from [the] employer provided to substantiate willful misconduct on your part.
>
> [Father's Mot. for Recons., 6/13/24, Ex. E at 1.]
>
> The [trial] court did not have this information at the time of the May 14, 2024 hearing. The [trial] court believes its factual finding regarding [Father's] earning capacity was consistent with [Pa.R.C.P. 1910.16-2(d)(1)(ii)]. Thus, the [trial] court did not abuse its discretion in assigning an income to [Father]. In light of the post-hearing evidence, the [trial] court would consider a downward adjustment when it regains jurisdiction.

Trial Ct. Op., 8/12/24, at 5-6.

The record reflects that Father's motion for reconsideration, which was filed on June 13, 2024, contained a finding from the Pennsylvania Department of Labor and Industry's Office of Unemployment Compensation Benefits dated May 14, 2024, stating that Father was discharged from his employment at Keramida due to unsatisfactory work performance, and that Keramida did not provide any information to substantiate a finding of willful misconduct. *See* Father's Mot. for Recons., 6/12/24, Ex. E. The record further reflects, however, that Father filed a timely notice of appeal on June 13, 2024. *See* Father's Notice of Appeal, 6/13/24.

It is well settled that filing of a notice of appeal generally divests the trial court of jurisdiction. **See Dovin v. Honey Brook Golf Club, L.P.**, 325 A.3d 1282, 1289 (Pa. Super. 2024); **see also Savage v. Savage**, 736 A.2d 633, 649 (Pa. Super. 1999); Pa.R.A.P. 1701(a). Once a notice of appeal has been filed, a trial court's authority is limited to preserving the *status quo*, "correct[ing] formal errors in papers relating to the matter," enforcement of orders, and entering orders granting reconsideration within the time prescribed for filing a notice of appeal. **See** Pa.R.A.P. 1701(b).

In the instant case, the trial court did not grant reconsideration within thirty days of the entry of the final support order. Accordingly, the trial court was divested of jurisdiction to act on Father's motion for reconsideration. **See** Pa.R.A.P. 1701(b)(3).[4] As the trial court correctly notes, in light of the evidence Father provided in his motion for reconsideration, the trial court may consider a downward adjustment in Father's support obligations when it regains jurisdiction. **See** Trial Ct. Op., 8/12/24, at 4, 5-6. Accordingly, because we are vacating and remanding for further proceedings with respect to Father's first two issues, upon regaining jurisdiction, we direct the trial court to address the evidence Father provided in his motion for reconsideration

---

[4] Even though Father filed an appeal, the trial court could have granted reconsideration within thirty days from the entry of the order, which would have rendered the notice of appeal "inoperative." Pa.R.A.P. 1701(b)(3). However, as noted, the trial court did not grant reconsideration within thirty days, and it was, therefore, divested of jurisdiction.

concerning the circumstances of his separation from his employment with Keramida and its impact on Father's support obligation.

## **Conclusion**

On this record, we vacate the trial court's order and remand for the trial to hold a hearing to: (1) determine what income or gains, if any, Father has realized from sales of his cars, car parts, and signage, which may be included and used to calculate Father's support obligation; (2) make findings of fact and conclusions of law with respect to what proceeds Father received from the LLC that were from the sale of the corpus of the inheritance that cannot be considered income, what proceeds such as rental income were from the LLC that could be considered income for purposes of calculating support pursuant to **Humphreys**, and whether Father's inheritance may be considered an asset such that a deviation from the support guidelines is appropriate; and (3) upon regaining jurisdiction, we direct the trial court to address the evidence Father provided in his motion for reconsideration concerning his separation from employment with Keramida and its impact on Father's support obligation.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/16/2025